# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re* Petition of Marginalised Affected Property Owners, *Applicant*, <br><br> For an Order Granting Leave to Issue Subpoenas To BSG Resources Ltd., Alvarez & Marsal Holdings, LLC, and Cleary Gottlieb Steen and Hamilton LLP for Taking of Discovery Pursuant to 28 U.S.C. § 1782 | Civil Action No. 21-681 |

**MEMORANDUM OF LAW IN SUPPORT OF THE PETITION OF MARGINALISED AFFECTED PROPERTY OWNERS (MAPO), PURSUANT TO 28 U.S.C. § 1782, FOR LEAVE TO ISSUE SUBPOENAS FOR TAKING OF DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ...................................................................................1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

III.   FACTUAL BACKGROUND....................................................................................2

   A.   MAPO has brought a civil case in Sierra Leone alleging that BSGR's subsidiaries are liable for harms arising from the Koidu Mine's operation. ....................................................................3

   B.   Respondents have repeatedly turned to U.S. courts to assist them in resolving their dispute over their mining interests in Guinea. .........................................................................6

   C.   BSGR and related entities have consistently evaded their discovery obligations throughout their disputes with Vale and Soros.............................................................8

IV.  NATURE OF INFORMATION AND DOCUMENTS SOUGHT...........................................10

V.    SECTION 1782 ENTITLES APPLICANT TO TAKE DISCOVERY FROM RESPONDENTS..................................................................................................13

   A.   Applicant satisfies Section 1782's three statutory requirements...................................13

      1. Respondents reside or are found in the Southern District of New York because this Court could exercise general or specific jurisdiction over them. ..........................................14

      2. Applicant is a paradigmatic "interested person" and seeks discovery for use in proceedings before a foreign tribunal. ...................................................................17

   B.   The discretionary factors favor granting discovery. .........................................18

      1. Respondents are not parties to the proceedings in Sierra Leone and are not subject to the jurisdiction of Sierra Leone courts. ..............................................................19

      2. The nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the Sierra Leonean court to U.S. federal court judicial assistance favors granting this application. ..................................................................................20

      3. This application does not conceal an attempt to circumvent foreign proof-gathering restrictions.....................................................................................21

      4. The discovery sought is narrowly tailored to the needs of the foreign litigation and is neither burdensome nor intrusive................................................................22

IV.  CONCLUSION....................................................................................................25

Applicant Marginalised Affected Property Owners' Association (MAPO) respectfully submits this Memorandum of Law in support of its Application under 28 U.S.C. § 1782 to obtain discovery from Respondents BSG Resources Limited (BSGR), Cleary Gottlieb Steen and Hamilton LLP ("Cleary"), and Alvarez & Marsal Holdings, LLC (A&M) (together "Respondents"). Applicant seeks this discovery for use in ongoing civil proceedings in Sierra Leone in which Applicant is a plaintiff. Applicant respectfully requests oral argument at the Court's earliest convenience if discovery is contested.

## I.   JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 as this matter arises under 28 U.S.C. § 1782. Respondents A&M and Cleary have their principal places of business in Manhattan. This Court thus has general personal jurisdiction over each of these respondents. Respondent BSGR is a foreign corporation, and this discovery request arises out of its substantial contacts with this District. As set forth below, the Court thus has specific jurisdiction over BSGR for the purposes of this discovery request.

Venue is proper under 28 U.S.C. § 1391(b)(2), as the documents at issue are located in, and the events that gave rise to them took place in, this District, or section 1391(b)(3), as all Respondents are subject to personal jurisdiction here.

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

Applicant MAPO, a community-based association of persons affected by the Koidu Kimberlite Project ("Koidu Mine"), has brought a civil action in Sierra Leone alleging damages to property and the environment at the Koidu Mine by BSGR subsidiaries and responsible company officials. By this Section 1782 application, Applicant seeks discovery from Respondents for use in the Sierra Leone proceedings. Applicant requests information in Respondents' possession, custody, and/or control related to BSGR's corporate structure and assets, including specific documents

produced by BSGR and its administrators in New York bankruptcy proceedings. This information will assist Applicant in substantiating its claims that the Sierra Leone defendant corporations and corporate officers are responsible for the operation of the Koidu Mine, and that an asset freezing order is necessary to preserve the Sierra Leone defendants' assets. Applicant believes that Respondents have possession, custody, and/or control of these documents due to their respective roles in BSGR's ongoing bankruptcy proceedings in New York, where BSGR is under administration, A&M employees serve as bankruptcy administrators, and Cleary is counsel for Vale, S.A., an intervenor in the proceedings.

This application satisfies the three statutory requirements of Section 1782: Respondents reside or may be found in this District, the requested discovery is for use in foreign proceedings, and as the plaintiff in the Sierra Leonean proceedings, Applicant is the ideal "interested person" entitled to seek assistance from this Court under Section 1782. Applicant seeks discovery that falls squarely in the purview of the statute.

Furthermore, the discretionary factors courts consider in assessing an application under Section 1782 weigh in favor of granting this application: (1) Respondents are not named or contemplated parties in the proceedings in Sierra Leone; (2) the court in Sierra Leone will be receptive to Section 1782 assistance; (3) this application does not conceal an attempt to circumvent foreign proof-gathering restrictions and is a good faith effort to obtain probative evidence; and (4) the discovery sought is specific, limited in scope, and not unduly intrusive or burdensome – indeed, Applicant seeks only documents that have already been produced in discovery in this District. *See Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

These documents are for use in ongoing litigation where time is of the essence. Accordingly, Applicant respectfully requests that the Court grant this application as expeditiously as possible.

## III.    FACTUAL BACKGROUND

### A.  MAPO has brought a civil case in Sierra Leone alleging that BSGR's subsidiaries are liable for harms arising from the Koidu Mine's operation.

This application arises out of a class action lawsuit in Sierra Leone alleging that operations at the Koidu Mine have devastated local communities by polluting the environment, degrading agricultural land, and destroying homes and livelihoods. Ex. A, Decl. of Chernor Mahmoud Benedict Jalloh ("Jalloh Decl.") ¶¶ 5-14.

The Koidu Mine is the largest operating diamond mine in Sierra Leone and was once at the heart of the blood diamond trade. Jalloh Decl. at ¶ 4. The mine is operated by Koidu Limited, which is wholly owned by Respondent BSGR through BSGR's subsidiary, Octea Limited, and other intermediate companies. *Id.* at ¶¶ 4, 16.

MAPO alleges that in 2007, Koidu Limited wished to begin mining using an explosive technique that the company's own Environmental Impact Assessment acknowledged was dangerous and disruptive to nearby inhabitants. *Id.* at ¶ 6. Koidu Limited promised to relocate those whose land would be affected by its operations, but only with the households' consent. *Id.* When some families refused to move, state agents acting for Koidu Limited forcibly removed inhabitants from their homes or destroyed their property. *Id.* The company's resettlement program included some of the evicted families, but sent them to infertile land far from markets and infrastructure, and left many more homeless and destitute. *Id.* at ¶ 6. Many residents continue to live within 500 meters of the mine perimeter despite Koidu Limited's recognition that they should be relocated. *Id.* at ¶ 7. The frequent explosions from the mine shake their homes, causing structural damage and terrifying and injuring the residents. *Id.*

Community members' quality of life has diminished due to increased difficulties in securing water for daily activities, general environmental degradation, loss of adequate accommodation, dramatic shifts in procuring their livelihoods, increased health concerns, and loss of property. Community members have lost farmland, allegedly as a result of the mining activities. *Id.* Rubble

from the mine's immense overburden pile – which looms over Koidu – has engulfed some residents' farmlands. *Id.* Many others report that their land is no longer productive, either because of water shortages since the blasting began or because the mine leaches toxic substances into their soil. *Id.* The company has dumped rocks and waste onto their farmland and caused flooding in previously fertile land. *Id.* With their reduced access to productive land and natural resources, some families can no longer grow enough to feed themselves and have no access to other sources of income. *Id.* at ¶ 9.

Plaintiffs also claim that pollution in the air and water from toxic mine waste causes serious health problems in Koidu and the surrounding communities. Dust, water contamination, and frequent blasting cause stress, skin rashes, digestive problems, headaches, respiratory infections, difficulty breathing, and a burning sensation in the residents' eyes. *Id.* at ¶ 8.

According to MAPO, these negative impacts have fallen on communities that enjoy few economic or social benefits from the mine. *Id.* at ¶ 10. Some groups have criticized the company for taking advantage of the government in 2003 – when the country was in ruins from civil war – to obtain project approval despite inadequate environmental studies and unfair fiscal arrangements. Despite statutory and contractual obligations to provide financial benefits to affected communities, the locals have seen very little benefit and the mine operators have rarely paid them their required share of the revenues. *Id.* at ¶ 10. The mine's disregard for human and environmental rights has sparked mass protest, to which police – with company support – have responded with violence, resulting in injuries and death.

**B.  The lawsuit is currently before the High Court of Sierra Leone.**

Seventy-three Koidu residents from the Gbense and Tankoro Chiefdoms, together with MAPO, filed a class action lawsuit against Koidu Limited, Octea Limited, and ten of Koidu

Limited's affiliates and directors[1] on March 4, 2019, in the High Court in Kenema, Sierra Leone. *Id.* at ¶ 11. At the same time, nine additional plaintiffs filed individual actions against the same twelve defendants. *Id.* at ¶ 12. MAPO later filed an additional lawsuit in conjunction with 14 other individuals, alleging similar harms. MAPO's claims rely on a range of forms of liability, including breaches of statutory and contractual duties, environmental damages, and common-law nuisance. *Id.* at ¶ 14. They seek damages, specific performance, and injunctive relief. *Id.*

After several months of litigation, the Sierra Leone courts ordered the actions to be transferred and consolidated before Sierra Leone's High Court. *Id.* at ¶ 12. While the High Court initially dismissed some of the plaintiffs' claims due to a technicality, the plaintiffs have re-instated their claims, which are proceeding towards discovery. *Id.* at ¶ 13.

At the beginning of the lawsuit, the plaintiffs filed an asset freezing order. Plaintiffs were concerned that BSGR would strip assets from Sierra Leone to satisfy its debts abroad, including a pending judgment in its dispute with Vale, which is described in detail below. *Id.* at ¶ 16. BSGR has previously concealed assets from courts by expatriating funds, stripping productive assets from the country, or assigning assets to third parties to shield their assets from courts and creditors. *Id.* at ¶¶ 19-23; *see also* Mem. of Law in Supp. of Mot. to Compel Compliance with the Disc. Reqs. 13-20, *Vale S.A., v. BSG Res. Ltd.*, No. 1:19-cv-03619 (S.D.N.Y. May 14, 2021) (Dkt. 73) (describing BSGR's convoluted corporate structure and non-arm's-length transactions). U.K. courts have recognized this risk and placed freezing orders on the assets of BSGR's parent companies Balda Foundation and Nysco Management Ltd., as well as other affiliated individuals. Letter to Judge Lane from Jeffrey A. Rosenthal 4, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. May 5, 2020) (Dkt.

---

[1] The other corporate defendants are Octea Diamond Ltd., Octea Mining Ltd., Octea Services Ltd., and Octea Foundation Ltd. As their names suggest, these defendants are subsidiaries or affiliates of Octea Ltd. The six individual defendants are the corporate defendants' managing directors.

90). Plaintiffs were also concerned that BSGR's strategic decision to place itself under administration in Guernsey threatened the Sierra Leone defendants' assets. Jalloh Decl. at ¶¶ 16-19. Sierra Leone courts have now imposed and then lifted the asset freeze at least three times. *Id.* at ¶ 16. The plaintiffs expect they will likely need to litigate this issue again in the coming months. *Id.*

### B.  Respondents have repeatedly turned to U.S. courts to assist them in resolving their dispute over their mining interests in Guinea.

BSGR and Cleary's client, Vale S.A., have been embroiled in a dispute over the Simandou Iron Ore concession in Guinea for much of the last decade. Mem. of Law in Supp. of Pet. for Recognition and Enforcement of a Foreign Arbitration Award 2-5, *Vale S.A. v. BSG Res. Ltd.*, 1:19-cv-03619 (S.D.N.Y. April 24, 2019) (Dkt. 5). Vale accuses BSGR of fraudulently inducing it to invest in the Simandou venture and illegally obtaining the mining rights through a complex bribery scheme. *Id.* at 1. Courts in Switzerland and the United States have since convicted Beny Steinmetz, the diamond tycoon behind BSGR, and other BSGR employees of bribery and corruption.[2]

In 2014, Vale filed a claim against BSGR in the London Court of International Arbitration. Both Vale and BSGR have used Section 1782 to seek assistance from U.S. courts in conducting discovery for the merits and enforcement of the London arbitration.[3]

In 2017, BSGR and two of its subsidiaries filed a complaint in this District seeking $10 billion in damages from George Soros and Open Society Foundation, alleging that Soros was

---

[2] *See, e.g.*, Press Release, Tribunal Pénal, République et Canton de Genève, Procédure pénale P/12914/13 dirigée contre Benjamin STEINMETZ et deux autres prévenus (Jan. 22, 2021), https://justice.ge.ch/en/node/2243; Award ¶ 292, *Vale S.A. v. BSG Res. Ltd.*, LCIA Case No. 142683 (London Ct. of Int'l Arb. 2019) ("Arbitration Award"), https://jusmundi.com/en/document/decision/en-vale-s-a-v-bsg-resources-limited-award-thursday-4th-april-2019.

[3] *See, e.g.*, Mem. of Law in Supp. of Pet. for an Order Pursuant to 28 U.S.C. § 1782 Compelling Disc. in Aid of a Foreign Judicial Proceeding, *In Re Application of BSG Res. Ltd.*, No. 1:16-mc-02552 (D.D.C. Dec. 21, 2016) (Dkt. 7-1); Mem. of Law in Supp. of *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, *In re Application of Vale S.A.*, No. 1:20-mc-00199 (S.D.N.Y. Apr. 24, 2020) (Dkt. 2).

responsible for the revocation of BSGR's Guinean mining license. Compl., *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-02726 (S.D.N.Y. Apr. 14, 2017) (Dkt. 1). BSGR claims that its interest in the Soros litigation is its most valuable asset in the world. Decl. of Malcolm Cohen ¶ 51, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Jun. 21, 2019) (Dkt. 24). Soros' motion to dismiss the claims is pending. Order, *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-02726 (S.D.N.Y. Jan. 25, 2021) (Dkt. 193) (reserving decision on motion until discovery is completed).

BSGR put itself under bankruptcy administration in Guernsey in February of 2018. *See* Statement Identifying Foreign Proceedings Pursuant to 11 U.S.C. § 1515(c) ¶¶ 32-34, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Jun. 3, 2019) (Dkt. 3). According to Vale, BSGR's bankruptcy aimed to undermine Vale's ability to enforce any potential arbitral award. Vale S.A.'s Initial Obj. to the Joint Administrators' Verified Pet. for Recognition of Foreign Proceedings under Chapter 15 of the U.S. Bankruptcy Code ¶¶ 6, 15, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Jul. 10, 2019) (Dkt. 29) ("Bankr. Obj.").

In April of 2019, the London Court of International Arbitration awarded Vale $2 billion. Arbitration Award ¶ 1005. Vale filed a petition to recognize and enforce its award against BSGR in this District, which the court granted. Judgment, *Vale S.A. v. BSG Res. Ltd.*, 1:19-cv-03619 (S.D.N.Y. Mar. 5, 2020) (Dkt. 51).

Shortly after its loss in the London court, BSGR filed a petition for recognition of the Guernsey bankruptcy in this District. Pet. for Recognition of a Foreign Proceeding, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Jun. 3, 2019) (Dkt. 1). The petition aimed to ensure that the Guernsey bankruptcy administrators maintained control over the Soros litigation and that U.S. courts respected the administrators' distribution of BSGR's assets rather than granting Vale the potential Soros judgment in satisfaction of their award. *See* Letter to All Known and Contingent Creditors from William Callewaert 4, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Mar. 5,

2020) (Dkt. 98-1).

Vale intervened to challenge BSGR's New York petition, arguing that the bankruptcy in Guernsey was illegitimate. *See* Bankr. Obj. at ¶ 1. Vale alleged that "questionable financial and legal dealings have been the hallmark of the Guernsey [bankruptcy] Administration," which, along with the related New York proceedings, aimed to "defraud a creditor" in "bad faith." *Id.* at ¶¶ 5, 15. Cleary acts as Vale's counsel in the New York bankruptcy and arbitration enforcement litigation.

On September 8, 2020, the court in Guernsey discharged the bankruptcy administrators and appointed three A&M employees as new administrators. *See* Letter to Judge Lane from Steven J. Reisman, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Sept. 14, 2020) (Dkt. 122). The A&M administrators have also taken over their predecessors' role in the New York bankruptcy. The Guernsey and New York bankruptcy proceedings are ongoing.

### C. BSGR and related entities have consistently evaded their discovery obligations throughout their disputes with Vale and Soros.

Bad faith has been the hallmark of BSGR and its associates' behavior in past discovery processes, where they have ignored, delayed, obfuscated, and where that failed, made incomplete productions. Together, BSGR's past practices paint a grim picture for any litigant who seeks even the most basic discovery from the group or its affiliates.

BSGR does not simply drag its feet in discovery. The London Court of International Arbitration determined that after BSGR failed to comply with numerous document production orders, it went so far as to reshuffle the ownership of several subsidiaries and shift them from one jurisdiction to another to evade discovery orders. Arbitration Award at ¶¶ 45-48, 50-52, 54-55, 62-64, 70, 131, 426, 683-87; Bankr. Obj. at ¶ 3.

This bad-faith behavior extends to the United States, where, as the plaintiff, BSGR has an incentive to comply with discovery orders in order to maintain its suit against George Soros and protect any potential judgment from Vale. BSGR and its affiliates have disregarded discovery

requests and orders in the Soros, arbitration enforcement, bankruptcy, and Section 1782 discovery proceedings in this District.[4] BSGR's evasion and maneuvering have burdened the parties and the courts with countless hours of unnecessary motions and hearings.

Indeed, BSGR's own bankruptcy administrators have raised concerns about BSGR's compliance with discovery orders, even in its home jurisdiction of Guernsey, where the power to compel it would be strongest. Nysco, one of BSGR's parent companies, also failed to fund the joint administrators, preventing them from effectively producing discovery on their own.[5] The administrators were unable to force BSGR directors, including Steinmetz himself, to produce documents or attend depositions, even though the administrators were employed by Nysco and were overseeing BSGR's bankruptcy process.[6] The administrators also could not prevent Steinmetz from negotiating with Guinea on behalf of BSGR, or investigate or analyze Stenimetz's settlement

---

[4] *See, e.g.*, Tr. at 21:14-21, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Oct. 11, 2019) (Dkt. 64) (Bankruptcy Judge Lane noting that the administrators have taken meritless positions to delay discovery); Letter to Judge Wang from Jeffrey A. Rosenthal 2-3, 4, *In re Application of Vale S.A.*, 1:20-mc-00199-JGK-OTW (S.D.N.Y. May 26, 2021) (Dkt. 88) (noting that after Judge Wang ordered Steinmetz's "investment vehicle" Perfectus to produce documents to Vale pursuant to Section 1782, Perfectus made incomplete production, then production ceased entirely, after counsel was "specifically selected to obstruct discovery"); Mem. of Law in Supp. of Mot. to Compel Compliance with the Disc. Reqs. 1, 6, *Vale S.A., v. BSG Res. Ltd.*, 1:19-cv-03619 (S.D.N.Y. May 14, 2021) (Dkt. 73) (noting that Stenimetz ignored discovery requests for over one year); Order, *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-02726 (S.D.N.Y. June 4, 2021) (Dkt. 253) (granting motion to compel Cramer and Steinmetz depositions).

[5] Letter to Judge Lane from Frederick Hyman 2, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Aug. 5, 2020) (Dkt. 109); Letter to Judge Lane from Frederick Hyman 1-2, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Sept. 3, 2020) (Dkt. 120).

[6] Letter to Judge Lane from Frederick Hyman 5-7, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Dec. 3, 2019) (Dkt. 78) (describing administrators' efforts to obtain documents from BSGR employees and related entities); Letter to Judge Lane from Frederick Hyman 2-3, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Sept. 3, 2020) (Dkt. 120) (describing BSGR director's unwillingness to be deposed); Tr. at 15:5-7, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Oct. 11, 2019) (Dkt. 64) (suggesting administrators cannot force Steinmetz to produce documents).

agreement with Guinea to decide whether to approve it, because they were being starved of funds.[7] If courts in the U.S., U.K., and even BSGR's own administrators could not force BSGR to produce discovery, the prospects for the Sierra Leone plaintiffs seeking discovery in Sierra Leone, where they have little leverage over BSGR, are grim. That makes this discovery request all the more crucial.

## IV. NATURE OF INFORMATION AND DOCUMENTS SOUGHT

Applicant seeks information regarding BSGR's corporate structure and finances, and the operations of the Koidu Mine, as listed in the Request for Production of Documents, attached as Exhibit B to this application. Applicant also requests that the Court order that Respondents cooperate as necessary – depending on the nature of the documents produced – in verifying the authenticity of the documents to facilitate their submission as evidence in the Sierra Leonean case. *See, e.g.*, *Amgen Inc. v. Hill*, No. 2:14-mc-00908-DN-EJF, 2015 U.S. Dist. LEXIS 38832, at *1-2 (D. Utah Feb. 24, 2015) (ordering documents produced under Section 1782 to be "accompanied by a signed certification verifying the authenticity of the documents").

Applicant requests a carefully delimited set of identifiable documents, which have already been produced in the bankruptcy and which – according to documents filed by Cleary on behalf of its client Vale in the New York proceedings – are not and should not be subject to any confidentiality agreement. *See* Opp'n to the Mot. of the Joint Administrators for an Order (I) Affirming Confidentiality Designations and (II) Modifying the Court's Confidentiality Stipulation and Req. for Sanctions 13, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. May 26, 2020) (Dkt. 97). Respondents Cleary and A&M's engagement in the Guernsey and New York bankruptcies gives

---

[7] Decl. of William Callewaert ¶ 18, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Sept. 18, 2019) (Dkt. 54-1) (noting that "Steinmetz negotiated with the Republic of Guinea" and that the administrators learned of "Steinmetz' negotiation and purported attempt to enter a settlement on the Debtor's behalf" after the fact); Tr. at 10:20-11:2; 26:18-27:14; 40:19-41:15, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Oct. 11, 2019) (Dkt. 64).

them possession of these documents, and this information will certainly assist the Sierra Leonean court in resolving the pending case.

Respondents are likely to have access to this information. While BSGR and its directors have sought to evade their discovery obligations, they have nonetheless produced some discovery in the New York bankruptcy. As parties to the ongoing bankruptcy, Vale (and its attorneys at Cleary), BSGR, and the A&M administrators will have possession of this discovery. A&M also independently has access to this information through its role as bankruptcy administrator. Likewise, BSGR has access to this information through the operation of its business.

The disputes in the bankruptcy center around two issues: whether BSGR's "center of main interest" is in Guernsey and whether BSGR's "bad faith in the conduct of its business and in pursuing recognition warrants the denial of [bankruptcy] relief." Bankr. Obj. at ¶¶ 1, 9. The "center of main interest" analysis considers the location of BSGR's property and liquid assets and BSGR's corporate structure, including the location "from where the debtor's activities are directed and controlled" and "the location of employees and managers." *Id.* at ¶¶ 7-11 (internal quotation marks omitted). The bad faith exception requires evidence of "(a) the redistribution of assets in the face of an imminent adverse ruling; (b) attempts at controlling a foreign representative or other independent fiduciary; (c) behavior resulting in the deprivation of the resources needed for a foreign representative to fulfill his/her duties; and/or (d) the orchestration of a chapter 15 case to deprive . . . [a] creditor of much or all of the fruits of its judgments." *Id.* at ¶ 14 (internal quotations omitted). BSGR has produced discovery in the bankruptcy on both issues.

Both of these categories of information are directly relevant to the Sierra Leone cases. Information about BSGR's corporate structure, assets, and deceptive business practices will establish that the Sierra Leone defendants are responsible for the operations of the Koidu Mine and help prove the merits of the asset freezing order.

To succeed in the Sierra Leone lawsuit, Applicant must prove that the Sierra Leone defendants are responsible for social and environmental wrongdoing and contractual breaches at the Koidu Mine. Jalloh Decl. ¶¶ 17, 25-27. Applicant needs to establish that the parent companies control Koidu Limited, which in turn manages the Koidu Mine. The identities of the true owners and managers of Koidu Limited are not evident, given BSGR's track record of using its multi-jurisdictional structure to hide legally significant information. Indeed, Octea Limited has claimed in the Sierra Leone litigation that some of its co-defendants no longer exist or have never existed. *Id.* at ¶ 21. Moreover, Octea Limited has previously used the complexity of its corporate group to cast doubt on the ownership of its assets and obligations in Sierra Leone in other cases.[8]

BSGR has produced information about the ownership of its assets and all claims thereto to prove that their "center of main interest" is in Guernsey. This discovery likely includes information about the ownership and management of the Koidu Mine, one of BSGR's most valuable assets, including evidence about how decisions were made regarding the Koidu Mine's operation. It likely also includes analysis of any risk to that income stream, including the costs and benefits of environmental or relocation decisions. From this information, Applicant will be able to resolve the identities of the responsible parties, and may also glean information relevant to the merits of its claims.

Applicant also expects to re-litigate the asset freezing order, which requires them to prove that the Sierra Leone defendants would intentionally shift assets out of Sierra Leone to avoid any future judgment. Jalloh Decl. ¶ 16. The evidence of BSGR's asset transfers and other questionable dealings that Vale requested to prove bad faith is likely to include transactions involving the Sierra

---

[8] *See* Hassan Morlai, *Are Judges in Sierra Leone and England punching above their weight?* POLITICO SL (Nov. 15, 2016), *available at* https://www.politicosl.com/articles/are-judges-sierra-leone-and-england-punching-above-their-weight.

Leone subsidiaries, given that the Koidu mine is one of the corporate groups' few productive assets. The legal proceedings in New York and Guernsey have established that BSGR is operated strategically for the benefit of Beny Steinmetz and that the operating components such as Koidu Limited and its co-defendants in the Sierra Leone lawsuits are manipulated to enable Steinmetz to maximize profit, evade creditors and hide information from tribunals. Applicant expects that the discovery sought in this application will shed light on the extent to which Koidu Limited, Octea Limited, and other affiliated companies are operated as a single entity as part of this overall scheme, and whether they have engaged in asset shifting transactions that might justify an asset freezing order.

## V. SECTION 1782 ENTITLES APPLICANT TO TAKE DISCOVERY FROM RESPONDENTS

Section 1782 permits district courts to order discovery in the United States in response to requests for assistance from foreign litigants. The statute has been given "increasingly broad applicability" over the years. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotation marks omitted). In order to obtain discovery under Section 1782, an applicant must first meet three statutory requirements. Once these statutory requirements are met, the court may consider several discretionary factors. *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015). Here, MAPO satisfies the statutory requirements, and the discretionary factors weigh in favor of granting discovery. The discovery MAPO requests is the type that Congress contemplated when passing 28 U.S.C. § 1782. This application therefore should be granted.

### A. Applicant satisfies Section 1782's three statutory requirements.

A district court possesses jurisdiction to grant a Section 1782 application where:

"(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."

*Mees*, 793 F.3d at 297 (quoting *Brandi-Dohrn*, 673 F.3d at 80) (alteration added by *Mees*). Applicant satisfies all three requirements: Respondents reside or are found in the Southern District of New York, the documents are for use in an ongoing proceeding in Sierra Leone, and as a party to the foreign proceedings, Applicant is the paradigmatic interested person.

> **1. Respondents reside or are found in the Southern District of New York because this Court could exercise general or specific jurisdiction over them.**

The Second Circuit has determined that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). Accordingly, each respondent "resides or is found" where a court could exercise general or specific personal jurisdiction over it. *Id.* at 527-28.

Respondent Cleary is a limited liability partnership (LLP) that maintains its principal place of business at One Liberty Plaza, New York City.[9] Respondent A&M is a limited liability corporation (LLC) that maintains its principal places of business at 600 Madison Avenue, New York City.[10] Both Cleary and A&M reside in New York, where they maintain their principal places of business, so this court could exercise personal jurisdiction over them. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding corporations reside where they are incorporated or have their principal place of business); *Hartford Fire Ins. Co. v. Maersk Line*, No. 18-cv-121(PKC), 2019 U.S. Dist. LEXIS 159765, at *15-16 (S.D.N.Y. Sep. 17, 2019) (applying *Daimler*'s test to a LLC); *Finn v. Great Plains Lending, LLC*, No. CV 15-4658, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016) (same); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n.14 (S.D. Cal. 2018) (adopting "*Daimler*'s

---

[9] Cleary Gottlieb Steen & Hamilton, New York Department of State, Corporation & Business Entity Database Search, https://appext20.dos.ny.gov/corp_public/corpsearch.entity_search_entry (search for "Cleary Gottlieb Steen & Hamilton").
[10] *See* About A&M, https://www.alvarezandmarsal.com/about-am (last visited Jun. 16, 2021) (identifying New York as A&M's "Global HQ").

two-part paradigmatic location approach for general jurisdiction" for a LLP); *Magna Powertrain De Mex. S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016) (explaining "personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well"); *Mitchell v. Fairfield Nursing & Rehab. Ctr., LLC*, No. 2:15-cv-00188-MHH, 2016 WL 1365586, at *6 (N.D. Ala. Apr. 6, 2016) (collecting cases).

Respondent BSGR is a foreign corporation. It is incorporated and has its principal place of business in Guernsey. BSGR is "found in" New York because the Court may exercise specific personal jurisdiction over it for the purposes of this discovery request.

"[W]hether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation marks omitted). In a Section 1782 discovery request, courts must (1) "decide if the individual or entity has 'purposefully directed his activities at the forum and the litigation arises out of or relates to those activities;'" and (2) "'then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.'" *In re del Valle Ruiz*, 939 F.3d at 528-29 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) and *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014)).

Where a Section 1782 request seeks documents for use in a foreign lawsuit, "the nonparty's contacts with the forum [must] go to the actual discovery sought rather than the underlying cause of action." *Id.* at 530. If the "discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery." *Id.* But where "contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.* And as the Supreme Court recently clarified in *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026-27 (2021), courts also have specific personal jurisdiction where the action is *related to* the

defendant's contact with the forum, even if the action did not *arise from* the contacts. Applied to the Section 1782 context, this court would have specific jurisdiction to order discovery if the discovery is related to BSGR's forum contacts, even if it did not directly arise from those contacts.

This discovery request "arises out of," or at least relates to, BSGR's New York activities. The documents are only present in New York because BSGR chose New York as the forum for its bankruptcy petition. And some of the documents exist solely because BSGR and the bankruptcy administrators created them as reports to the bankruptcy court or because the parties to the bankruptcy requested depositions.

There is no question that BSGR has purposefully directed its acts at this forum, intending to avail itself of the laws of New York. BSGR's ten billion dollar interest in the Soros litigation is located in New York because BSGR elected to file its claims in New York, not in Guinea, where the alleged incidents took place. BSGR chose to further make use of the U.S. court system to enforce its foreign bankruptcy judgment to protect this asset, and to seek discovery for a foreign arbitration. BSGR's other contacts with New York are extensive, including maintaining bank accounts in New York and routinely using U.S. wires. Mem. of Law in Supp. of Pet. for Recognition and Enforcement of a Foreign Arbitration Award 18-19, *Vale S.A. v. BSG Res. Ltd.*, 1:19-cv-03619 (S.D.N.Y. April 24, 2019) (Dkt. 5). Indeed, Vale's enforcement of the foreign arbitration award was properly brought in this district in part because of BSGR's contact with New York. *Id.* at 18-20.

The "nature and extent of the defendant's relationship to the forum State" makes the maintenance of this suit fair and reasonable. *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)). BSGR's repeated use of New York courts is not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). After repeatedly using the American court system to extract benefits when it sees fit, including asking U.S. courts to assist it in conducting discovery for the London arbitration, it is

only just that BSGR is subject to the same discovery obligations. *See In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1037-38 (N.D. Cal. 2016) (noting that respondent's "deliberate choice of this forum for its litigation" helped establish that respondent was "found in" the district). Indeed, Applicant only seeks documents that BSGR already produced in the New York bankruptcy case that it initiated. Similarly, making use of the New York banking system is a purposeful availment of the benefits of U.S. laws, which ought to subject a party to jurisdiction. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (KBF), 2013 WL 1155576, at *14 (S.D.N.Y. Mar. 13, 2013) (holding that "repeated use of a correspondent account in New York . . . show[s] purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of the United States") (internal citations omitted).

Beyond being purposeful, BSGR's contacts with New York are broad and significant. This is not a case of an entity that is spread across continents, with New York connections constituting only a small portion of its assets. BSGR's administrators claim that its ten billion dollar interest in the Soros litigation is its "most valuable asset anywhere in the world." Decl. of Malcolm Cohen ¶ 51, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. June 21, 2019) (Dkt. 24). BSGR's contacts with New York are so pervasive, and of such a legal nature that BSGR cannot plausibly argue that it could not "anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, this Court can exercise specific personal jurisdiction over BSGR for the purposes of the discovery request, so BSGR is found in New York.

### 2. Applicant is a paradigmatic "interested person" and seeks discovery for use in proceedings before a foreign tribunal.

As one of the plaintiffs in the Sierra Leone proceedings, MAPO is clearly an "interested person" within the meaning of Section 1782. *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . ."); *accord In re Application of 000 Promneftstroy*, 134 F.

Supp. 3d 789, 791 (S.D.N.Y. 2015).

Applicant seeks discovery for use in its lawsuit currently pending before a Sierra Leone court. The discovery contemplated by this request is "for use" in the ongoing Sierra Leonean proceedings because it would provide information that Applicant could submit to the Sierra Leonean court and that is beneficial to the resolution of the issues in dispute. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). In assessing whether discovery is "for use" in a foreign proceeding, a court may not consider whether the information sought would be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82 ("Accordingly, as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."). Instead, it considers "the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131. As a litigant in the Sierra Leone cases, Applicant has the ability to place this evidence before the Sierra Leonean court. Jalloh Decl. ¶ 28-33. Indeed, it already has submitted evidence from the public bankruptcy docket in the proceedings in Sierra Leone. *Id.* at ¶ 34. Applicant thus satisfies the three statutory requirements.

### B.  The discretionary factors favor granting discovery.

Once the statutory requirements are met, "a district court may grant discovery under § 1782 in its discretion." *Mees*, 793 F.3d at 297. This discretion "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 297-98 (internal quotation marks omitted). Four factors may guide a district court's exercise of discretion to grant discovery under Section 1782 (the "*Intel* factors"):

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent";

18

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*Id.* at 298 (quoting *Intel*, 542 U.S. at 264-65).

In this case, all four *Intel* factors weigh in favor of granting Section 1782 discovery.

Nonetheless, a failure to meet any of them does not preclude discovery. *See, e.g.*, *Intel*, 542 U.S. at

246, 264, 266 (remanding for further analysis even though respondent was a party to the underlying

case); *accord Gorsoan Ltd. v. Bullock*, 652 Fed. App'x 7, 9 (2d Cir. 2016) (noting that "participation in

the foreign proceedings does not automatically foreclose § 1782 aid").

### 1. Respondents are not parties to the proceedings in Sierra Leone and are not subject to the jurisdiction of Sierra Leone courts.

The need for discovery is more apparent where the person from whom discovery is sought

is not a participant in the matter abroad. *See Intel*, 542 U.S. at 264. Respondents are not parties to the

proceedings in Sierra Leone, and are located in the United States and Guernsey. The Sierra Leone

court could not, as a matter of law, require Respondents to produce these documents, because they

are outside of the court's jurisdiction; accordingly, this factor favors discovery.

The defendants in the foreign proceeding – Koidu Limited, Octea Limited, and their

affiliates and directors – do not have access to much of the requested discovery. The deposition

transcripts and some other reports were created specifically for the bankruptcy, and would only be

in the possession of the parties to the bankruptcy. The Sierra Leone defendants would not hold

documents that BSGR possesses by virtue of its position as their parent company. For instance,

BSGR may have provided its letter of guaranty to Octea's creditors without copying Octea, and if

Octea defaulted on the loan correspondence may have gone straight to BSGR. Likewise, BSGR, not

its subsidiaries, would hold BSGR's analysis of their business operations, assets, loans, or

environmental or resettlement issues and BSGR board meeting minutes, even if the board discussed the subsidiaries.

While BSGR's subsidiaries are parties to the foreign proceedings, parent companies are considered separate legal entities from their subsidiaries and affiliates in Section 1782 proceedings. *See In re del Valle Ruiz*, 939 F.3d at 523 (evaluating Section 1782 request for discovery from foreign parent company separately from its U.S. affiliate); *accord In re Top Matrix Holdings Ltd. for an Order to Take Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 18 Misc. 465 (ER), 2019 U.S. Dist. LEXIS 210264, at *15-16 (S.D.N.Y. Dec. 2, 2019) (holding that "the court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary"). As a subsidiary, Koidu Limited cannot force BSGR to produce documents.

Even if the Sierra Leone court or the Sierra Leone defendants could theoretically request the discovery from BSGR, there is no requirement to exhaust one's remedies in the foreign court before submitting a request under Section 1782; "a 'quasi-exhaustion requirement,'" the Second Circuit has held, "finds no support in the plain language of the statute and runs counter to its express purposes." *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). The Court should still grant discovery even if the documents were available in Sierra Leone, because it is unlikely that any party would actually produce the discovery in Sierra Leone, given BSGR's past practices of evading or delaying their discovery obligations at every turn. *See infra* Section III.D. Applicant has its greatest, and possibly only, chance of receiving the documents here, where BSGR has already produced them to protect its stake in the Soros litigation.

### 2. The nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the Sierra Leonean court to U.S. federal court assistance favors granting this application.

There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to

the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). In order to deny discovery because of a lack of receptiveness, a court must find "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100.

Here, Applicant is the plaintiff in a civil action for damages and has fully and accurately disclosed the nature of the proceedings. Jalloh Decl. ¶¶ 11-16. The Sierra Leone action will enter an evidentiary phase in the coming months, during which the parties will submit evidence, and Applicant may offer discovery from Respondents as evidence in support of its claims. *Id.* at ¶¶ 13, 28-32. Information that is in the hands of Respondents is directly relevant to the Sierra Leonean case and will be important for resolving the dispute around responsibility for operation of the Koidu Mine. The Sierra Leonean court has the authority to accept evidence produced through Section 1782 discovery. Indeed, the court in Sierra Leone has already shown its receptivity to precisely the categories of information Applicant seeks, accepting evidence that was publicly available from the electronic docket for the New York bankruptcy in support of a previous freezing order. *Id.* at ¶¶ 33-34. This factor favors granting discovery.

### 3. This application does not conceal an attempt to circumvent foreign proof-gathering restrictions.

This application is not an attempt to "circumvent foreign proof-gathering restrictions" or other policies of Sierra Leone or the United States; it is a good faith effort to access probative and highly relevant evidence for use in the Sierra Leonean proceedings. "'[P]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (quoting *Intel*, 542 U.S. at 265) (alteration added by *Mees*). Judges in this District have held that for a

21

respondent to demonstrate circumvention, an applicant must have acted in bad faith. *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018); *see also In re Auto-Guadeloupe Investissement S.A.*, No. 12 MC 221 (RPP), 2012 U.S. Dist. LEXIS 147379, at *23 (S.D.N.Y. Oct. 10, 2012) (finding that an applicant "may have acted in bad faith" by mischaracterizing foreign case).

The Supreme Court expressly rejected the proposition that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *Brandi-Dohrn*, 673 F.3d at 82; *see Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Rather, this factor looks primarily to whether the discovery sought seriously offends the public policy of the forum state or the United States. *In re Okean B.V.*, 60 F. Supp. 3d 419, 428-30 (S.D.N.Y. 2014) (rejecting discovery of documents because "it would offend core tenets of our legal system (and those of Russia and Ukraine)"); *see also In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195-96 (S.D.N.Y. 2006).

The Sierra Leonean court would readily accept the requested information if Applicant acquires it through the Section 1782 mechanism. Jalloh Decl. ¶¶ 33-34. There are no rules prohibiting the court in Sierra Leone from granting discovery over these documents – the foreign tribunal simply lacks jurisdiction to compel the Respondents to provide the evidence. *Id.* at ¶¶ 28-32. Applicant is not seeking to use Section 1782 for abusive purposes. The third *Intel* prong thus favors discovery.

### 4. The discovery sought is narrowly tailored to the needs of the foreign litigation and is neither burdensome nor intrusive.

The final *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." 542 U.S. at 265. Like all federal discovery, the proper scope of discovery under Section 1782 is governed by Federal Rule of Civil Procedure 26(b). *Mees*, 793 F.3d at 302; *accord In re Hansainvest*, 364

F. Supp. 3d at 251. Accordingly, district courts retain "broad authority" to impose reasonable limits and conditions on discovery orders issued under Section 1782. *See In re Malev*, 964 F.2d at 102. There is no reason for the Court to deny these reasonable and narrowly tailored discovery requests.

Applicant's discovery requests are relevant to central issues in the Sierra Leone proceedings, and their burden is proportional to the needs and import of a case alleging serious abuses. They are narrowly tailored, which reduces the burden of discovery. They are limited in time and scope to documents produced in the New York bankruptcy proceedings. Those documents have already been organized, assessed for relevance, filtered for privilege, and produced, so producing them again will minimally burden Respondents. *See In re Gorsoan Ltd.*, No. 17-cv-5912 (RJS), 2021 U.S. Dist. LEXIS 13402, at *18-19 (S.D.N.Y. Jan. 25, 2021) (distinguishing between files the respondent had previously produced in the U.S. and documents located abroad in foreign languages).

There is no reason to believe that these documents, produced in litigation in this District, are no longer present here. In any event, the original location of the documents is irrelevant – the documents were originally produced in the United States, and in the digital age, the location of document is no longer a particularly relevant inquiry where electronically stored information may be accessible anywhere in the world. *See In re Veiga*, 746 F. Supp. 2d 8, 26 (D.D.C. 2010) ("[Respondent] shall be required to produce only responsive documents located within the United States, a category that includes electronically stored information *accessible from within this District*." (emphasis added)); *In re Bloomfield Inv. Res. Corp.*, 2016 U.S. Dist. LEXIS 25821, at *7 (S.D.N.Y. Feb. 25, 2016) (stating that Respondents had "not offered evidence showing that the [relevant] documents named in the subpoena are actually located in Russia, rather than in the United States *or in electronic files readily accessed by Respondents*") (emphasis added).

Even if Respondents hold some of the responsive documents abroad, Section 1782 does not explicitly restrict extraterritorial discovery. In *Intel*, the Supreme Court cautioned against introducing

23

judicially created limitations on discovery that do not appear in the text of the statute, such as the foreign-discoverability requirement that it rejected: "If Congress had intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect." 542 U.S. at 260 (internal quotation marks omitted). Because Section 1782 does not explicitly prohibit extraterritorial discovery, a district court may order discovery of evidence that a corporation "found in" the United States holds abroad. *See In re del Valle Ruiz*, 939 F.3d at 533; *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016); *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20 Misc. 188 (PAE), 2020 U.S. Dist. LEXIS 94910, at *25 (S.D.N.Y. May 29, 2020).

There is also no policy reason to protect these documents. They are not privileged – they were produced in the bankruptcy litigation. Cleary, as a law firm, is not immune from discovery for non-privileged documents that it holds. *Ratliff v. Davis, Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003).

Nor are the documents immune from discovery due to the bankruptcy protective order.[11] While the former administrators designated virtually all of the bankruptcy discovery as confidential, Cleary argued that many of these designations were not permissible under the protective order and announced that it would no longer treat these documents as confidential. Opp. to Mot. for an Order (I) Affirming Confidentiality Designations and (II) Modifying the Court's Confidentiality Stipulation & Request for Sanctions 1-5, 12-27, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. May 26, 2020) (Dkt. 97). Indeed, the former administrators implicitly acknowledged that the majority of the

---

[11] The protective order could not prevent BSGR and A&M from producing these documents, because – unlike Cleary – they did not obtain them through discovery. "[A] protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

bankruptcy discovery does not merit confidential treatment. *Id.* at 11, 26. And the A&M administrators agree "that many of the Former Joint Administrators' designations may be inconsistent with the Protective Order." Letter to Judge Lane from Steven J. Reisman 1-2, *In re BSG Res. Ltd.*, No. 19-11845 (Bankr. S.D.N.Y. Nov. 9, 2020) (Dkt. 126).

The limited discovery sought from Respondents is thus neither unduly intrusive nor burdensome and falls well within the scope of discovery that the Federal Rules allow.

## IV.   CONCLUSION

The information sought by this application would provide significant assistance for the full and fair adjudication of the Sierra Leonean proceedings. For the foregoing reasons, Applicant respectfully requests that the Court enter an Order granting leave to serve Respondents with the discovery attached to this application as Exhibit B.

Dated: August 19, 2021                                    Respectfully submitted,

                                                         /s/LINDSAY A. BAILEY

                                                         Lindsay A. Bailey, Esq.
                                                         Bar Code for S.D.N.Y.: 5747878
                                                         EarthRights International
                                                         1612 K Street NW, Suite 800
                                                         Washington, D.C. 20006
                                                         Tel: 202-466-5188
                                                         Fax: 202-466-5189
                                                         lindsay@earthrights.org

                                                         *Attorney for Applicant*