# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re* Petition of Marginalised Affected Property Owners,<br>*Applicant*,<br><br>For an Order Granting Leave to Issue Subpoenas To BSG Resources Ltd., Alvarez & Marsal Holdings, LLC, and Cleary Gottlieb Steen and Hamilton LLP for Taking of Discovery Pursuant to 28 U.S.C. § 1782 | Civil Action No. 1:21-mc-00681 |

**EXHIBIT A: DECLARATION OF CHERNOR MAHMOUD BENEDICT JALLOH IN SUPPORT OF THE PETITION OF MARGINALISED AFFECTED PROPERTY OWNERS FOR AN ORDER GRATING LEAVE TO ISSUE SUBPOENAS FOR TAKING DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Chernor Mahmoud Benedict Jalloh, Esq., declare the following:

1. I am a Sierra Leonean attorney and principal partner of C&J Partners, a law firm that specializes in legal action on behalf of communities and workers in Sierra Leone.
2. I was called to the Sierra Leone Bar in October 2004, and have practiced before the High Superior Courts judicature of Sierra Leone for 16 years.
3. I am lead counsel for the plaintiffs in the consolidated matters of Aiah Fengai and 73 others and Morie Momoh and 14 others and nine individual additional actions now consolidated as Sia Jannet Bayo and 8 others against the mining company Koidu Ltd., five affiliated corporate entities, and their respective Managing Directors (collectively, "the Actions").[1]

**The Koidu Mine**

4. Koidu Limited operates the Koidu Kimberlite Project, the largest diamond mine in Sierra Leone.

[1] *See* Ex. 1, Consolidated Class Action Writ in the Consolidated Matters of Sia Janet Bayo et. al.; Ex. 2, Consolidated Class Action Writ in the Matter of Aiah Fengai and 73 Others. Exhibit 1 includes a scanned copy of the stamped, filed writ, as well a copy of the original document that is more legible.

5.  Over the past fifteen years, Koidu Limited has operated the mine with a total disrespect for the health, safety, and livelihoods of my clients.

6.  In 2007, Koidu decided to implement a new blasting technique, which the company's own impact assessments acknowledge was extremely dangerous and likely to disrupt the nearby communities. Koidu promised to relocate the nearby households, with those households' consent. When the families refused to consent, police and military acting on Koidu's behalf forcefully evicted the families. Some families received compensation, but many were left homeless. Others were relocated to undesirable homes far from fertile lands, markets, and other necessities.[2]

7.  Many of my clients continue to reside close to the mine, within 500 meters of the blasting. The blasting disturbs their lives, sending rocks and other debris into their homes, injuring people, shaking their buildings, and terrifying their children. Previously fertile farmland is buried under the immense rubble pile, or is no longer productive after the blasting began.[3]

8.  After the mining began, my clients noticed an increase in health problems, including respiratory infections, burning sensations in their eyes, skin rashes, digestive problems, high blood pressure, headaches, and difficulty breathing.[4]

9.  Community members have reported difficulties in accessing water for agriculture and daily activities. Some families are no longer able to produce enough food to feed themselves.[5]

10. Many of my clients have not received promised financial benefits from the mine.

**The civil action against Koidu**

11. On April 1, 2019, Marginalised Affected Property Owners Association, a community-based association of persons affected by the mine's operations, and nine individuals from the

---

[2] *See* Ex. 1 at 4-5, 8, 29; Ex. 2 at 4.
[3] *See* Ex. 1 at 4, 8-9, 12-13, 16-17, 20-21, 24, 28-29, 23-33, 25-36; Ex. 2 at 4-7.
[4] *See* Ex. 1 at 4, 11, 12, 20, 28, 32, 35, 36; Ex. 2 at 4, 6.
[5] *See* Ex. 1 at 8-9, 13, 20, 28, Ex. 2 at 5.

Gbense and Tankoro Chiefdoms filed suit against Koidu Limited, Octea Limited, Octea Diamond Ltd., Octea Mining Ltd., Octea Services Ltd., and Octea Foundation Ltd., and the managing directors of the aforementioned companies in the High Court at Kenema in Sierra Leone.

12. Nine additional, similar legal actions were later filed. The court has consolidated the claims before the High Court in Makeni.

13. While the High Court initially dismissed some of Plaintiffs' claims on a technicality, the plaintiffs have re-instated their claims, which are proceeding towards discovery.[6]

14. The plaintiffs' claims against the defendants encompass both a plaintiff class and individuals, and are based on a range of legal theories and forms of liability, including breaches of statutory and contractual duties, environmental damages, and common-law nuisance. The plaintiffs allege that the defendants are responsible for a wide range of damages, abuses, and neglect, including:

- Pollution and depletion of water sources

- Destruction and poisoning of productive farmlands

- Destruction of property

- Persistent dust and noxious fumes produced by blasting and continuous traffic of Defendants' heavy vehicles on unpaved roads

- Damage to nearby homes due to the flying rocks and powerful tremors created by Defendants' aboveground and underground blasts

- Physical injuries

- Neglect to relocate and/or compensate some community members whose lives have been rendered untenable by the above-described impacts

---

[6] *See* Ex. 1, Ex. 2.

- Relocation of other community members under sub-standard conditions
- Failure to pay a percentage of revenues into a community development fund, as required by Sierra Leone law and the company's Community Development Agreement[7]

15. Prior to filing their writs of summonses (in Sierra Leone civil procedure, the writ of summons is one vehicle for initiating a civil complaint), the plaintiffs received leave from the Court to serve all defendants at a single address that serves as their operating address in Sierra Leone. In granting that motion, the judge tacitly recognized that the six corporate defendants (collectively, "the Octea Group") are all present and operating together in Sierra Leone, but he declined to make findings of fact on their relationship to each other.[8]

16. Plaintiffs sought an asset freezing order, given our fear that Octea and its parent company, BSG Resources ("BSGR") would intentionally shift assets out of Sierra Leone to avoid any future judgment. My colleagues and I submitted evidence from BSGR's New York bankruptcy in support of this motion. While the court initially granted this order, it was later vacated. The court has re-instated and lifted the asset freeze twice more. We are seeking to reinstate this order.

17. In resolving the claims, the trial judge will be required to rule on the responsibility of parent and affiliate companies of Koidu Ltd. – the operating company that owns the Koidu Mine in Sierra Leone – for the environmental, social, and financial wrongdoing that has harmed the plaintiffs. The identity of the owner of the Koidu Mine and related assets is likely to be an important issue at trial.

18. The financial capacity, assets, and debts or obligations of the defendants and related companies are likely to be important issues in the event of a judgment favorable to the plaintiffs, should execution of the judgment be contested.

---

7 *See* Ex. 1 at 3, Ex. 2 at 2-3.

8 *See* Ex. 3, March 13, 2019 Order of the Hon. Justice Asuma Ivan Sesay.

19. Filings in the New York bankruptcy proceedings paint a picture of a corporate group that is not just in severe financial distress. Rather, BSGR and its subsidiaries including Octea (collectively, "the BSG Group") has been systematically stripped of their assets and personnel; their subsidiaries have been shuffled from country to country to hide and protect them from creditors and court-ordered discovery; and their revenue streams have been pledged and assigned to third parties who often appear to be fronts for BSGR and its ultimate beneficiaries, Beny Steinmetz and his family.[9]

20. As the only operating unit that is regularly producing revenue for the BSG Group, the Octea Group's mining operations in Sierra Leone are a natural target for this financial gamesmanship; in fact, in disclosures filed in the bankruptcy proceedings, it has been revealed that one of the corporate defendants in the Sierra Leone proceedings owes over 300 million dollars to BSGR and a little-known investment company that has well-established ties to Mr. Steinmetz.[10]

21. Indeed, the Octea Group itself has previously attempted to avoid its financial obligations to staff members in Sierra Leone by pointing the finger at other members of the corporate group and insisting that they are not present in Sierra Leone.[11] The trial judge will therefore likely need to make findings of fact as to which corporate party is in fact the holder of the Octea Group members' assets and obligations, which will require a close examination of the financial affairs of the BSG Group as they pertain to the Sierra Leone operations.

22. In addition, recent disclosures, including at the January 2021 criminal conviction of Mr. Steinmetz in Geneva for a spectacular corruption scandal, have shown that Mr. Steinmetz

---

[9] *See, e.g.*, *In Re BSG Resources Ltd.*, Case No. 19-11845-shl, Dkt. 69 (S.D.N.Y. April 29, 2021).
[10] *See, e.g., id.* Dkt. 98-1, Ex. I at 9, 12.
[11] *See, e.g.,* Hassan Morlai, *Are judges in Sierra Leone and England punching above their weight?*, THE PATRIOTIC VANGUARD (Nov. 8, 2016), *available at* http://thepatrioticvanguard.com/are-judges-in-sierra-leone-and-england-punching-above-their-weight.

has closely controlled BSGR and that financial and administrative services for all BSG Group companies are provided by a third-party service provider that is itself under the control of the BSG Group.[12]

23. Given the financial disarray and confusion prevailing among the entities in the BSG Group, the attempts by BSGR to avoid its creditors and contractual obligations, and the high level of fiscal control and involvement that BSGR exercises in its subsidiaries including the Octea Group, it will likely be necessary to examine the financial affairs of the BSG Group as they pertain to the Sierra Leone operations in order to identify additional potential defendants, such as BSGR and Mr. Steinmetz himself.

**The discovery requested in this application**

24. This application requests targeted information in three general categories that are squarely relevant to the issues discussed in the previous section.

25. First, the application seeks unprivileged documents already produced in the bankruptcy proceedings related to the internal corporate governance of the Octea Group, and to the BSG Group as it pertains to the Octea Group. This information is relevant to the issue of corporate structure and the responsibility of various members of the two Groups for each other's affairs.

26. Second, the application seeks unprivileged documents already produced in the bankruptcy proceedings related to the finances of the BSG Group as they relate to the Octea Group. This information is relevant to the issue of corporate structure, the holding of assets and obligations relative to the Koidu Mine, the identification of additional responsible parties, and the eventual enforcement of a judgment any judgment in favor of the plaintiffs.

---

[12] *See* Tribunal Pénal, République et Canton de Genève, *Procédure pénale P/12914/13 dirigée contre Benjamin STEINMETZ et deux autres prévenus* (Jan. 22, 2021), *available (in French) at* https://justice.ge.ch/en/node/2243.

27. Third, the application seeks unprivileged documents already produced in the bankruptcy proceedings with respect to environmental and social obligations at the Koidu Mine – the precise matters at issue in the High Court litigation. Some material touching on these issues is likely to have been produced in the bankruptcy proceedings given the potential magnitude of the defendants' liability, the existing indebtedness of Octea Ltd. to BSG Resources and others, and the implications of that liability for BSG Resources' ability to satisfy debts.

**Discovery in Sierra Leone High Court proceedings**

28. There is conceptually no barrier to the use of evidence from the United States in Sierra Leone civil proceedings before the High Court.

29. The Sierra Leone civil courts are no strangers to discovery. Order 27 of the Sierra Leone High Court Rules (2007)[13] sets up the framework for discovery in civil cases after the close of pleadings; several separate Orders provide for specific types of discovery – such as interrogatories, production of documents, and admissions;[14] and other Orders, such as Order 28, expressly modify otherwise applicable timelines to accommodate discovery.[15]

30. In general, discovery in Sierra Leone proceeds on the basis of an exchange of lists of documents "relating to the matters in question in the action" that is in the possession of each party to the litigation, and the right of all litigants to inspect the documents on each other's discovery lists.[16]

31. If one party believes that another has omitted to include relevant documents in the other's possession on the list, the first party may make a motion requesting the production of such "particular documents."[17]

---

[13] *See* The High Court Rules (2007), Order 27, *available at*
http://www.sierraleonetrc.org/downloads/legalresources/highcourtrules.pdf.
[14] *Id.* Orders 29 – 32, 34.
[15] *Id.* Order 28 subrule (2).
[16] *See id.* Order 27, subrules (1), (2), and (10).
[17] *See id.* subrule (7).

32. The requirement to produce documents is therefore limited only by the relevance of the documents to the matters in question in the action; all the documents sought in this application would be discoverable in Sierra Leone if they were held by a party to the litigation.

**Use of evidence from the United States in Sierra Leone proceedings**

33. There is no limitation on the use of evidence obtained in foreign proceedings – much less from U.S. courts – in aid of Sierra Leone proceedings, aside from generally applicable rules prohibiting the introduction of hearsay evidence and the requirement that copies of documents be duly certified as true copies.[18]

34. In fact, in earlier phases of this case, multiple trial judges have accepted evidence attached to affidavits derived from the electronic case dockets of the bankruptcy proceedings and other related proceedings in this District. At one point, a judge imposed a freezing order on the assets of the defendants almost solely on the basis of evidence produced and filed in U.S. proceedings.[19]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 18th day of August, 2021, in Makeni, Sierra Leone.

______________________________
Chernor Mahmoud Benedict Jalloh, Esq.

---

[18] *See* Evidence (Documentary) Ordinance Cap. 26, Sec. 3(1) & (2).
[19] See Ex. 4, Freezing Order of August 19, 2020.

# EXHIBIT 1

2019 S NO.9; ISATA FILLIE CC: 23 E F 2019 NO.10; TAMBA SUPER MABAY CC24 E M 2019 NO.4; ADIKALIE BANGURA CC 15 E B 2019 NO. 2; MEMUNATU JALLOH CC: 21 E J 2019 NO. 7; AND ABDULAI KAMARA CC20/19E K, 2019 NO.7; - PURSUANT TO THE ORDER OF THE HON. MR. JUSTICE UNISA KAMARA (J) DATED: THE 16TH DAY OF JUNE 2021.

**CC:** /3/2021 **B** 1 **2021** **NO:** 2

**IN THE HIGH COURT OF SIERRA LEONE**
**MAKENI DISTRICT REGISTRY**
**(COMMERCIAL AND ADMIRALITY DIVISION)**

HIGH COURT ON DATE 13/7/2021 MAKENI

Sierra Leone
(TO WIT)
BETWEEN:
SIA JANET BAYOH & 8 OTHERS — PLAINTIFF
TRIPOLI-TANKORO
KOIDU

AND

| | |
|---|---|
| OCTEA LIMITED | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5thDEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11thDEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

BY HIS EXCELLENCY THE PRESIDENT OF THE REPUBLIC OF SIERRA LEONE SUPREME HEAD OF STATE, GRAND COMMANDER OF THE ORDER OF THE REPUBLIC, COMMANDER-IN-CHIEF OF THE ARMED FORCES, FOUNTAIN HEAD OF UNITY, HONOUR, FREEDOM, AND JUSTICE.

TO: OCTEA LIMITED, THE MANAGING DIRECTOR OCTEA LIMITED, OCTEA DIAMOND LTD, THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED, OCTEA MINING LIMITED, THE MANAGING DIRECTOR OCTEA MINING LIMITED, OCTEA SERVICES LIMITED, THE MANAGING DIRECTOR OCTEASERVICES LIMITED, OCTEA **FOUNDATION LIMITED, THE MANAGING DIRECTOR OCTEAFOUNDATION LIMITED, KOIDU LIMITED, THE MANAGING DIRECTORKOIDU LIMITED**

WE COMMAND YOU that within 14 days after service of the Writ on you, exclusive of the day of such service, you do cause an appearance to be entered for you in the High Court of Sierra Leone in an Action at the suit of SIA JANET BAYOH & 8 OTHERS and pursuant to the Consolidated Order

WITNESS the Honorable MR.JUSTICE DESMOND BABATUNDE EDWARDS, Chief Justice of the Republic of Sierra Leone, the 13th day of July in the Year of our Lord, 2021

HIGH COURT
SIGN
DATE 13-7-2021
MASTER AND REGISTRAR
MAKENI

N.S

This Writ is to be served within twelve calendar months, from the date thereon, or if renewed, within six calendar months from the date of such renewal, inclusive of the day of such date, and not afterwards. The Defendant may appear hereto by entering an Appearance either personally or by a Solicitor at the Master's Office, High Court of Sierra Leone Makeni District Registry.

A Defendant appearing personally may, if he desires, enter his appearance by post and appropriate forms may be obtained by sending a postal order for Le300.00 with an addressed envelope, foolscap size, to the Master and Registrar, High Court Makeni District Registry.

If the Defendant enters an appearance, he must also deliver a Defence within ten (10) days from the last day of the time limited for appearance unless such time is extended by the Court or a judge; otherwise judgment may be entered against him without notice, unless he has in the meantime been served with a summons for judgment.

## STATEMENTS OF CLAIM OF SIA JANNET BAYO

The Plaintiffs Claim against the Defendants jointly and/or severally and in the following Individual Statement of Claim are:

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. **Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.**
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

## PARTICULARS OF CLAIM OF SIA JANNET BAYO

1. **That until she was resettled in 2016, the Plaintiff was a resident and a fee simple owner of Three** Town Lots of land at Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.
2. That since resettlement, the Plaintiff has been in occupation of a plot of land in the Resettlement Community at Tripoli in Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.
3. That prior to resettlement, Plaintiff was the fee simple owner of 5 houses, 2 private schools, and 2 churches located on her property in Saquee Town.

Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

5. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th& 11th Defendants respectively.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th Defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. That prior to resettlement, the Koidu Kimberlite Project produced many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions caused dust to enter onto Plaintiff's property, making her cough. The noise and vibrations from the blasts shocked and distressed her, causing chest pains.

12. That the 11th Defendant's mining activities contaminated the water and made it change colour. When Plaintiff and her children drank this water, they would get diarrhoea.

13. The rubble from the 11th Defendant's mining operations covered two town lots of swamp land that Plaintiff previously farmed and engulfed two town lots of land that she had inherited from her sister.

14. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012 – wherein the 11th Defendant covenants inter alia 'to use all reasonable endeavours to resettle all duly affected households and to pay monetary compensation to each affected town…' same including the Plaintiff herein.

15. According to the said RAP, and the International Standards that the Defendants are required to follow pursuant to the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

16. That beginning in 2010, the 11th Defendant tried to induce Plaintiff and her family to leave their land. Originally, they refused to sign any resettlement agreement or abandon their homes because Defendants had not yet constructed replacement structures at the Resettlement Site, but after representatives of the 11th Defendant pleaded with her husband and promised to replace all their structures, he signed an Agreement.

17. That when they inspected the Resettlement Site, Plaintiff and her husband discovered that the replacement structures were smaller, had fewer rooms, and had been built of inferior materials

18. That Representatives of the Defendants came to Plaintiff's home one day and threatened to force her family to relocate.

19. That one night in 2016, when Plaintiff and her family were all in their home, the 11th and 12th Defendants caused a flood of water to be diverted from the mine site directly onto Plaintiff's home. Part of one of her houses collapsed, and 460 of her 600 pigs were killed in the flood.

20. That as a result of this incident and at the Plaintiff's request, the Defendants provided transport for her and her family to move to the Resettlement Site on an emergency basis. However, the vehicle provided failed to transport her remaining pigs that survived the flood and instead dropped them off on the side of the road.

21. That she was eventually able to charter a new vehicle, but in the ensuing chaos and confusion, 25 additional pigs died. Only 115 of her original 600 pigs arrived at the Resettlement Site alive.

22. As a result of these impacts, Plaintiff has suffered in the following ways:

   a. Extreme emotional distress and psychological harm
   b. Loss of income from pigs
   c. Loss of valuable structures
   d. Nuisance/interference with enjoyment of property
   e. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES SIA JANNET BAYO**

1. Loss of income from pigs since 2016 at Le 139,680,000 (Le 96,000 per year per pig x 485 lost pigs x 3 years)

**PARTICULARS OF EMOTIONAL DISTRESS SIA JANNET BAYO**

1. Plaintiff was distraught due to the repeated efforts of the Defendants to evict her from her land, including Defendants' malicious decision to divert flood waters onto her land.

2. Plaintiff was distressed by the sudden death of most of her pigs – her primary source of income – in the flood caused by the Defendants.

3. Before she was resettled Plaintiff was frequently troubled by the sounds and vibrations from Defendants' blasting, which shocked her and gave her chest pains.

**PARTICULARS OF NUISANCE SIA JANNEY BAYO**

1. Defendants' blasting operations and trucks caused dust and noxious fumes to enter upon Plaintiff's land. These nuisances caused respiratory and skin illnesses and interfered with her enjoyment of his property.

2. Defendants' blasting operations create noise pollution that entered onto Plaintiff's land prevented her from enjoying her land peaceably.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..............................

**COUNSEL**

Statement of Claim are:

1. General Damages
2. Special Damages
3. Damages for extreme emotional distress
4. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
5. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
6. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
7. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
8. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
9. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
10. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
11. Damages for Nuisance suffered by the Plaintiffs.
12. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
13. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
14. Any further or other Order(s) as this Honourable Court may deem fit and just.
15. Costs

**PARTICULARS OF CLAIM TAMBA PRINCE BOIMA**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of approximately 3 acres of land situated at 19 Gbense Gbombu Street, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone, where the 11th and 12th Defendants operates a mining concession
2. That the Plaintiff is and was at all material times the fee simple owner of 8 homes, one flat, two hog pens, and a rice mill located on the said property.
3. That the 1st, 3rd, 5th, 7th, and 9th Defendants are a group of Mining Companies operating through the 11th and 12th Defendants herein that engages in Mining Activities in the Tankoro and Gbense Chiefdoms respectively, in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th& 11th Defendants respectively.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District where the Plaintiff resides and owns properties.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked multiple structures that he owns, once causing the interiors of one of his properties to collapse.

12. That the water table has been disturbed by the Defendants' activities, and the land has become dryer and less productive. The Plaintiff's economic trees bear significantly fewer yields, only yielding once a year now instead of twice, and in smaller quantities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. He can no longer sustain a sufficient income from his rice mill because farmers no longer bring their rice to his mill out of fear of the earth tremors and dust from the explosions.

14. That the Plaintiff was previously able to rent out 36 rooms to tenants, but he can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012 – wherein the 11th and 12th Defendants covenants inter alia 'to use all reasonable endeavours to resettle all duly affected households and to pay monetary compensation to each affected town…' same including the Plaintiff herein.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th& 12thDefendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

71,000,000/00 for his properties, crops and trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate him after this time. He continues to live in his homes – which have been damaged by the defendants' explosions – on his land, where he lives in constant apprehension of the dust and tremors from the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES TAMBA PRINCE BOIMA**

1. Plaintiff's loss of rental income at Le 97,200,000.00 (Le 25,000 x 12 months x 36 rooms x 9 years)

2. Plaintiff's loss of income from economic trees at Le 90,000,000.00 (Le 6,000,000 – Le 1,500,000) x 20 years average productive lifespan)

**PARTICULARS OF EMOTIONAL DISTRESS TAMBA PRINCE BOIMA**

1. Plaintiff is subjected to distress from seeing his community abandoned and left to decline from the vibrant area into a ghost town.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**WHEREFORE THE PLAINTIFF CLAIMS**:

1. General Damages

2. Special Damages

3. Damages for extreme emotional distress

4. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

5. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

6. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

7. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

8. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

impinge on Plaintiffs' enjoyment of their property.

11. Damages for Nuisance suffered by the Plaintiffs.

12. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

13. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

14. Any further or other Order(s) as this Honourable Court may deem fit and just.

15. Costs

..............................

**COUNSEL**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM OF KUMBA KING**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of four (4) Town Lots of land situated at 16 Jabba Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of four (4) homes located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. The Defendants frequently detonate powerful explosives. These explosions have expelled dust particles into the air that impaired the Plaintiff's eyesight, for which she required professional medical assistance. They have shaken and cracked her walls, and she had to repair the damages without assistance or compensation from the defendants. They have also caused hearing loss in Plaintiff and cause her to live in a constant nervous state.

12. The Defendant also dumped large rocks and rubble from its operations into a swamp area that the Plaintiff previously possessed and used for rice and vegetable farming. It has been buried under rocks, and she has been forced to seek other land to continue her farming activities, even going to another village.

13. The area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She was previously able to rent out twelve bedrooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

14. The Plaintiff used to be part of a society that met in a sacred area that included a burial site for the members. Since the defendants have covered the area with artificial mounds, she is distressed because she has lost the ability to practice her traditional culture.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are is required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP, and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That representatives of the 11th defendant visited Plaintiff to assess her property, telling her they would compensate her for her crops in recurring payments every five years.

continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she lives in constant apprehension of the blasting and struggles to make an adequate income.

21. That the Defendants also failed to compensate her for the land they buried with rubble and rocks from their operations, or for the financial burden the Plaintiff must now bear to travel to another village in order to farm crops

22. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES KUMBA KING**

1. Plaintiff's loss of 38,880,000 Leones in rental income (30,000 Leones x 12 months x 12 rooms x 9 years)

2. Plaintiff's expenditure of 1,000,000 Leones to repair her home that was damaged by defendants' explosions

3. Plaintiff's loss of 80,000,000 Leones in crops and economic trees (Le 1,500,000 of corn + Le 700,000 of onion +Le 900,000 of groundnut + 600,000 Leones of bananas + Le 1.2 Million of mangos + Le 550,000 of pears + Le 400,000 of palm +Le 350,000 of orange + Le 800,000 of guava = Le 7,000,000 per annum. Le 7,000,000 x average 20 years lifespan = 140 Million Leones. Le 140,000,000 - 60,000,000 Leones in compensation received = 80,000,000).

**PARTICULARS OF EMOTIONAL DISTRESS KUMBA KING**

1. Plaintiff suffers from emotional distress due to her inability to access the Bondo bush and practice her traditional culture.

2. Plaintiff is subjected to constant apprehension or fear of mandatoryevacuations due to blasting.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..............................

**COUNSEL**

2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM FATU SAM**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 1 Renner Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.
2. That the Plaintiff is and was at all material times the fee simple owner of 2 homes located on the said property.
3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. **That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.**
5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9thDefendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th& 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls, once causing one of her houses to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and vegetable farming. The water diversion has completely flooded the swamp and the water is full of rock particles, making it impossible for her to continue her farming activities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She can no longer carry on her trading activities because there is not enough traffic.

14. That the Plaintiff was previously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by the explosion.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two (2) Resettlement Action Plan (RAP)Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

eventually paid a total of Le 5,140,000, an amount that is considerably lower than the value of her crops and economic ...

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from economic trees
    c. Loss of rental income from letting out of rooms in their homes to tenants
    d. Nuisance/interference with enjoyment of property
    e. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES FATU SAM**

1. Plaintiff's loss of rental income at Le 15,000,000 (for 9 years)

2. Plaintiff's expenditure of Le 1,000,000 to repair her home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from economic trees at Le 21,000,000 (Le 400,000 per year per Mango Tree x 3 trees x 20 years), minus Le 3,000,000 received in compensation.

**PARTICULARS OF EMOTIONAL DISTRESS FATU SAM**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary.This state of uncertainty has destroyed her community and her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**WHEREFORE THE PLAINTIFF CLAIMS:**

17. General Damages

18. Special Damages

19. Damages for unlawful deprivation of property

20. Damages for extreme emotional distress

21. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

22. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

23. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

24. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

25. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

26. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

27. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

28. Damages for Nuisance suffered by the Plaintiffs.

29. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

30. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

31. Any further or other Order(s) as this Honourable Court may deem fit and just.

32. Costs

..............................

**COUNSEL**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM ISATA FILLIE**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 1.5 Town Lots of land situated at No. 1 Yorka Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.
2. That the Plaintiff is and was at all material times the fee simple owner of 3 homes located on the said property.
3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.
5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls, once causing one of her houses to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and vegetable farming. The water diversion has completely flooded the swamp and the water is full of rock particles, making it impossible for her to continue her farming activities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She can no longer carry on her trading activities because there is not enough traffic.

14. That the Plaintiff was previously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its their mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

19. After the property assessment, the Plaintiff was given a voucher [...] eventually paid a total of Le 5,140,000 an amount that is considerably lower than the value of her crops and economic trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES ISATA FILLIE**

1. Plaintiff's loss of rental income at Le 17,280,000 (Le 20,000 x 12 months x 8 rooms x 9 years)

2. Plaintiff's expenditure of Le 1,000,000 to repair her home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from economic trees at Le 21,860,000 (Le 400,000 per year per Mango Tree x 2 trees x 20 years, plus Le 550,000 per year per Tombi Tree x 1 tree x 20 years, minus Le 5,140,000 compensation received).

**PARTICULARS OF EMOTIONAL DISTRESS ISATA FILLIE**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary. This state of uncertainty has destroyed her community and her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**WHEREFORE THE PLAINTIFF CLAIMS:**

33. General Damages

34. Special Damages

35. Damages for unlawful deprivation of property

36. Damages for extreme emotional distress

37. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

38. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

40. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment Licenses.

41. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

42. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

43. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

44. Damages for Nuisance suffered by the Plaintiffs.

45. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

46. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

47. Any further or other Order(s) as this Honourable Court may deem fit and just.

48. Costs

..................................

**COUNSEL**

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

**PARTICULARS OF CLAIM TAMBA SUPER MABAY**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 14 Jabba Street, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of 3 homes located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project which is operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked the walls of his houses. And they leave the Plaintiff in a prolonged state of anxiety, as the company can detonate explosives at any time during the day or night.

12. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. He no longer carries on his daily activities (teaching and preparing private pupils for External Examination) because many people have deserted the area and relocated to safe places within the town.

13. That the Plaintiff was previously able to rent out 6 rooms to tenants but can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

14. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

15. On May 13, 2017, the 11th& 12th Defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs – the 11th & 12th Defendant are required to follow Sierra Leone law and International Standards with respect to all its Mining Activities.

16. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

17. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess his crops and property. The aforesaid Defendants further promised the Plaintiff that if he was relocated, scholarships would be provided for his siblings and would be relocated the relocation would occur shortly within 1 year 6 months, but up till now, that has not been done.

18. After the property assessment and crop valuation, the Plaintiff was given a voucher pursuant to which he was eventually paid a total sum of Le 7,000,000, an amount that is considerably lower than the value of his crops and economic trees.

make an adequate income.

20. As a result of these impacts, the Plaintiff has suffered in the following ways:

a. Extreme emotional distress and psychological harm
b. Loss of income from farming
c. Loss of income from economic trees
d. Loss of rental income from letting out of rooms in their homes to tenants
e. Nuisance/interference with enjoyment of property
f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES TAMBA SUPER MABAY**

1. Plaintiff's loss of rental income at Le 16,200,000 (Le 25,000 x 12 months x 6 =rooms x 9 years)

2. Plaintiff's loss of income from economic trees at Le 6, 400,000 (yearly) x 20 years= Le 29,200,000
   a. 4 Mango Trees: Le 100,000 per year x 4 trees x 20 years = Le 8,000,000
   b. 4 Orange trees: Le 50,000 per year x 4 trees x 10 years = Le 2,000,000
   c. 4 Palm trees: Le 20,000 per year x 4 trees x 10 years = Le 800,000
   d. 2 Pea tree: Le 40,000 per year x 4 trees x 10 years = Le 1,600,000
   e. 2 Sweet Sharp tree: Le 20,000 per year x 4 trees x 15 years = Le 1,200,000

   (Less Le 7,000,000 compensation received)

**PARTICULARS OF EMOTIONAL DISTRESS TAMBA SUPER MABAY**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the Defendants could come at any moment and force him to leave his land and property. He is unable to move forward because there is no suitable resettlement home prepared for him, and he also cannot maintain, repair, or improve his current home and land because he knows that his residency there is only temporary. This state of uncertainty has destroyed his community and peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time during the day or night.

**WHEREFORE THE PLAINTIFF CLAIMS**:

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..............................

**COUNSEL**

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

**PARTICULARS OF CLAIM ADIKALI BANGURA**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 9 Jabbah Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of 1 home located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused stones to fall on Plaintiff's home. Before the blasting moved underground two years ago, the constant barrage damaged his zinc roof repeatedly.

12. That on one occasion, a stone crashed through his wall, destroying personal property including a television and a computer. On another occasion, stones from the mine destroyed two rooms of his house, which he has never had the resources to repair.

13. That the above-ground blasting – now discontinued – and the dust that Defendants' trucks kick up as they speed down the road that runs between his house and the mining rubble pile frequently cause dust to rain down on Plaintiff and his property, leaving white patches on his skin that erupt into itchiness and rashes.

14. That Plaintiff is an herbalist who harvested plants and leaves from his around his home to make traditional medicines. Since the Koidu Kimberlite Project began, water has been scarce on his property and soil fertility has dropped. The leaves and herbs no longer grow, and as a result his income has been reduced.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law.

1. In furtherance of the fulfilment of this obligation, it produced 2 two Resettlement Action Plan (RAP) Documents (RAP) – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That beginning in 2010, the Defendants attempted to induce Plaintiff to leave his home so they could take over his land. First, representatives of the 11th Defendant came to his land to assess his home, but he refused to accept the assessment because there was no home for him in the relocation site.

ex-wife for his crops and property in his stead, without his permission.

20. That the Defendants entered onto Plaintiff's land with a bulldozer, installed a boundary marker in the middle of his land, and destroyed 15 of his economic trees without compensation. The Defendants built a road on the portion of land that they invaded.

21. Defendant continues to live in his home, on his land, where he cannot afford to repair his blast-damaged house and is no longer able to make an adequate income.

22. As a result of these impacts, Plaintiff has suffered in the following ways:

   a. Extreme emotional distress and psychological harm
   b. Loss of income from economic trees
   c. Loss of income as an herbalist
   d. Expenditures to repair his home
   e. Nuisance/interference with enjoyment of property
   f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES ADIKALIE BANGURA**

1. Plaintiff's loss of income from economic trees destroyed by Defendants' bulldozers at Le 80,000,000 (Le 450,000 per orange tree per year x 20 years x 5 trees, plus Le 400,000 per mango tree per year x 20 years x 4 trees, plus Le 50,000 per guava tree per year x 10 years x 6 trees)

2. Plaintiff's expenditure of Le 4,000,000 to repair his home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from herbalist practice as a result of disappearance of leaves and plants due to diminished water supply caused by Defendants' mining activities at Le 81,000,000 (reduction of Le 9,000,000 per year x 9 years)

**PARTICULARS OF EMOTIONAL DISTRESS ADIKALIE BANGURA**

1. Plaintiff is in a constant state of worry because he knows that the Defendants' mining activities are causing physical harm to his body. He is exposed to chemicals and dust from the trucks, the blasting, and the mining effluent, and he cannot get adequate or clean water on his land anymore. This creates a lot of stress for him.

2. Defendants caused the Plaintiff severe emotional distress when they fraudulently tried to induce his son and ex-wife to accept payment for his own property and confronted him with evidence that the son and ex-wife had in fact improperly accepted the compensation.

**PARTICULARS OF NUISANCE ADIKALIE BANGURA**

1. Defendants' blasting operations and its trucks, which speed down the road that passes just behind Plaintiff's house, cause dust and noxious fumes to enter upon Plaintiff's land. These nuisances cause respiratory and skin illnesses and interfere with his enjoyment of his property.

2. Defendants' blasting operations create noise pollution that enters onto Plaintiff's land prevents him from enjoying his land peaceably.

3. Defendants' above-ground blasting operations caused stones to fly onto Plaintiff's property, damaging his home and disturbing his peace of mind.

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

..............................

**COUNSEL**

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

## PARTICULARS OF CLAIM MEMUNATU JALLOH

1. That the Plaintiff is and was at all material times until resettlement a resident and fee simple owner of 3 Town Lots of land situated at Gandor Park, Saque Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

3. That the Plaintiff is and was at all material times the fee simple owner of 2 houses located on the said property.

4. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.

5. **That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.**

6. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

8. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

9. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

10. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

11. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

12. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

13. That the 11th Defendant frequent blasting results to the loss of plaintiff's properties in phones, sheeps and money also making it impossible for her to continue her plantation/farming activities.

14. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area and can no longer carry on her farming activities

15. That the Plaintiff was previously able to rent out 4 rooms to tenants, but she can no longer do so because nobody wants to live close to the mine site, in a zone that is so frequently shaken by explosions.

16. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan Documents (RAP) – an Original RAP in 2003 and an Upgraded RAP in 2012.

17. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

18. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

19. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on the land.

21. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes which have been damaged by the defendants' explosions on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

22. That the Plaintiff thereafter had to resettle herself and family at her own expense with considerable hardship on her part.

23. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from economic trees
    c. Loss of income as an herbalist
    d. Expenditures to repair his home
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES MEMUNATU JALLOH**

1. Plaintiff's loss of rental income at Le 8,640,000 (Le 20,000 x 12 months x 4 rooms x 9 years)

2. Plaintiff's loss of income from the death of 8 sheep due to blasting and flying of rocks at Le: 57,600,000 (Le; 800,000 per sheep x 8 sheep x 9 years)

**PARTICULARS OF EMOTIONAL DISTRESS MEMUNATU JALLOH**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary and thus her voluntary resettlement, this state of uncertainty and sole resettlement disintegrate her family and affects her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night before her resettlement.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..................................

**COUNSEL**

**STATEMENTS OF CLAIM ABDULAI KAMARA**

1. Deprivation of Property

2. Special Damages

3. Failure to comply with the MMA 2009

4. Enforcement of the MMA 2009

5. Specific Performance of the Mining Lease Agreement

6. Abatement of the nuisance

7. Accounting of compliance with Article 15.13 of the Mining Lease Agreement

8. Specific Performance of the 2012 extended RAP Agreement,

9. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License and renewal Licenses.

10. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

11. **Damages for Nuisance in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.**

12. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment

13. Any further or other Order(s) as this Honourable Court may deem fit and just.

14. Costs

**PARTICULARS OF CLAIM ABDULAI KAMARA**

2. That the Plaintiff ... as at all material times the fee simple owner of 2 houses located on the said property.

3. That the 1st, 3rd, 5th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendant

8. The 1st, 3rd, 5th, 7th, and 11th defendants are all under common control and are operated as a joint enterprise by parent company, BSG Resources Ltd., and the operations complained of in this Statement personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite ject produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to on Plaintiff's home. They have shaken and cracked her walls, once causing one of her ho to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate losives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and table farming. The water diversion has completely flooded the swamp and the water is full rock particles, making it impossible for her to continue her farming activities.

13. That the area where Pl f lives is now largely deserted and is no longer a commercially vibrant area. She can no longe ry on her trading activities because there is not enough traffic.

14. That the Plaintiff was iously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. **Knowing that the peo living in the area surrounding the mine would suffer some or all of these impacts, the 11th 12th Defendants knew that they would be required to create a program to resettle the affected lation pursuant Sierra Leone Law. In furtherance of the fulfilment** of this obligation, it th produced 2 two Resettlement Action Plan Documents (RAP) documents – an Original RAP in and an Upgraded RAP in 2012.

and belief, all the previous CDAs, the 11th is required to follow Sierra Leone law and International Standards in respect to all its mining activities.

17. According to the said [illegible]P and the International Standards that the Defendants are required to follow pursuant to the [illegible]ning Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely [illegible] affected by the mining operations were to be resettled on appropriate land with adequate str[illegible]es and facilities before mining activity started to affect their lives.

18. That Representatives o[illegible] 11th Defendant visited Plaintiff in 2010 to assess her property, telling him that they would p[illegible]er for the crops and economic trees she would lose when relocated and that she would be relo[illegible]ed within five years. They also told her that if she was not relocated within five years, her p[illegible]erty would be reassessed, and the company would begin paying rent for the use and impacts [illegible] land.

19. After the property ass[illegible]ment, the Plaintiff was given a voucher pursuant to which she was eventually paid a total [illegible]Le 3,000,000, an amount that is considerably lower than the value of her crops and economic [illegible]

20. That the Defendants [illegible] contacted Plaintiff or attempted to relocate her after this time. She continues to live in he[illegible]es – which have been damaged by the defendants' explosions – on her land, where she remai[illegible]rrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these im[illegible]s, Plaintiff has suffered in the following ways:

- a. Extreme [illegible]onal distress and psychological harm
- b. Loss of m[illegible] from economic trees
- c. Loss of re[illegible] income from letting out of rooms in their homes to tenants
- d. Nuisance/[illegible]ference with enjoyment of property
- e. Breach of [illegible]tract

**PARTICU[illegible]RS OF SPECIAL DAMAGES ABDULAI KAMARA**

1. Plaintiff's loss of the [illegible] that collapsed due to the defendants' blasting of Kimberlite, valued at the time at Le: 50,000[illegible]

2. The Plaintiff's loss of [illegible]l income at Le [illegible]0,000 per year since 2010 to the date of this action (for 9 years)

3. Plaintiff's loss of inco[illegible]m economic tre[illegible] x 20 years at Le: 57,000,000 (Le: 750,000 per year for 3 mango tre[illegible] x [illegible]rs, plus Le 75[illegible] per year for 2 orange trees x 20 years, plus Le; 750,000 per year x 20 [illegible]s for 2 guava trees) minus Le; 300,000 received)

4. The Plaintiff's loss of [illegible]s at Le; 2, 250,000 for nine years (150,000 per year for corns, plus Le 100,000 for grn[illegible] [illegible]undnuts, per year [illegible] 9 years)

5. Plaintiff's loss of inc[illegible]rom economic tre[illegible] at Le 21,000,000 (Le 400,000 per year per Mango Tree x 3 trees x 20 ye[illegible] minus Le 3,000,000 received in compensation

**PAR[illegible]ULARS OF NU[illegible]NCE ABDULAI KAMARA**

1. Defendants' b[illegible] [illegible]tions and [illegible] caused dust and noxious fumes to enter upon Plaintiff's lands. Th[illegible] [illegible]sances caused [illegible]ratory and skin illnesses and interfered with her enjoyment of [illegible]

2. Defendants' bl[illegible] [illegible]ions crea[illegible] [illegible]lution that entered onto Plaintiff's lands prevented them from enjoy[illegible] [illegible]d peaceab[illegible]

1. [illegible]
2. Special Dama[illegible]
3. Failure to com[illegible] with the MMA 20[illegible]
4. Enforcement [illegible] MMA 2009
5. Specific Perfor[illegible]nce of the Mining Lease Agreement
6. Abatement of [illegible]uisance
7. Accounting of [illegible]pliance with Article 15.13 of the Mining Lease Agreement
8. Specific Perfo[illegible]nce of the 2012 extended RAP Agreement,
9. A Declaratio[illegible] the Defendant[illegible] failed to comply with Terms and Conditions of their Environ[illegible]l Impact Assessment License and renewal Licenses.
10. Specific [illegible] of A[illegible] the Community Development Agreement (CDA 2017)
11. Damages for [illegible]ance, in particula[illegible]e emission of dust, toxic fumes, and loud noises that impinge [illegible]aintiffs' enjoyment of their property.
12. Interest pursu[illegible] Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of [illegible] Leone 1960 [illegible]ate of Judgment
13. Any fur[illegible] Order(s) as th[illegible]nourable Court may deem fit and just.
14. Costs

..............................

**COUNSEL**

Writ of Summons is issued by C&J Partners whose address for service is No. 1 Flower Corner, Makeni- for and on behalf of the Plaintiffs herein

| NO | NAME | ADRESS |
|---|---|---|
| 1 | SIA JANNET BA | TRIPOLI TANKORO-KOIDU CITY |
| 2 | TAMBA PRINCE IMA | GBENSEGBOMBU STREET TANKORO |
| 3 | KUMBA KING | 16 JABBA STREET SAQUE TOWN, KOIDU CITY |
| 4 | FATU SAM | RENNER STREET SAQUE TOWN KOIDU CITY |
| 5 | ISATA FILLIE | 1 KEISTER STREET, KOIDU CITY |
| 6 | TAMBA SUPER BAY | 14 JABBA STREET KOIDU CITY |
| 7 | ADIKALIE BAN A | JABBA STREET SAQUE TOWN, KOIDU CITY |
| 8 | MEMUNATU | BANDOR PARK/ KAIMBADU RESETTLEMNT |
| 9 | ABDULAI KAM | 10 JABBA STREET SAQUETOWN KKOIDU CITY |

..........................

COUNSEL

IN THE CONSOLIDATED MATTERS OF SIA JANET BAYO, CC: 18/ B 2019, B; NO: 5 TAMBA PRINCE BOIMA CC: 17 E 2019 B NO. 4; KUMBA KING CC 16 E K NO. 3; FATU SAM CC: 22 E 2019 S NO.9; ISATA FILLIE CC: 23 E F 2019 NO.10; TAMBA SUPER MABAY CC24 E M 2019 NO.4; ADIKALIE BANGURA CC 15 E B 2019 NO. 2; MEMUNATU JALLOH CC: 21 E J 2019 NO. 7; AND ABDULAI KAMARA CC20/19E K, 2019 NO.7; - PURSUANT TO THE ORDER OF THE HON. MR. JUSTICE UNISA KAMARA (J) DATED: THE 16TH DAY OF JUNE 2021.

**CC: B 2021 NO :**

**IN THE HIGH COURT OF SIERRA LEONE**
**MAKENI DISTRICT REGISTRY**
**(COMMERCIAL AND ADMIRALITY DIVISION)**

Sierra Leone
(TO WIT)
BETWEEN:

| | |
|---|---|
| SIA JANET BAYOH & 8 OTHERS<br>TRIPOLI-TANKORO<br>KOIDU | PLAINTIFF |

AND

| | |
|---|---|
| OCTEA LIMITED | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5thDEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11thDEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

---

## WRIT OF SUMMONS

---

This Writ of Summons was served by on The Defendants
On the day of 2021
Dated this: day of 2021
**Address:**
**Signed:**

C & J PARTNERS
1 FLOWER CORNER
MAKENI

IN THE CONSOLIDATED MATTERS OF SIA JANET BAYO, CC: 18/ B 2019, B; NO: 5 TAMBA PRINCE BOIMA CC: 17 E 2019 B NO. 4; KUMBA KING CC 16 E K NO. 3; FATU SAM CC: 22 E 2019 S NO.9; ISATA FILLIE CC: 23 E F 2019 NO.10; TAMBA SUPER MABAY CC24 E M 2019 NO.4; ADIKALIE BANGURA CC 15 E B 2019 NO. 2; MEMUNATU JALLOH CC: 21 E J 2019 NO. 7; AND ABDULAI KAMARA CC20/19E K, 2019 NO.7; - PURSUANT TO THE ORDER OF THE HON. MR. JUSTICE UNISA KAMARA (J) DATED: THE 16TH DAY OF JUNE 2021.

**CC: B 2021 NO :**

**IN THE HIGH COURT OF SIERRA LEONE**
**MAKENI DISTRICT REGISTRY**
**(COMMERCIAL AND ADMIRALITY DIVISION)**

Sierra Leone
(TO WIT)
BETWEEN:

| | |
|---|---|
| SIA JANET BAYOH & 8 OTHERS<br>TRIPOLI-TANKORO<br>KOIDU | PLAINTIFF |

AND

| | |
|---|---|
| OCTEA LIMITED | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5thDEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11thDEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

BY HIS EXCELLENCY THE PRESIDENT OF THE REPUBLIC OF SIERRA LEONE SUPREME HEAD OF STATE, GRAND COMMANDER OF THE ORDER OF THE REPUBLIC, COMMANDER-IN-CHIEF OF THE ARMED FORCES, FOUNTAIN HEAD OF UNITY, HONOUR, FREEDOM, AND JUSTICE.

TO: OCTEA LIMITED, THE MANAGING DIRECTOR OCTEA LIMITED, OCTEA DIAMOND LTD, THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED, OCTEA MINING LIMITED, THE MANAGING DIRECTOR OCTEA MINING LIMITED, OCTEA SERVICES LIMITED, THE MANAGING DIRECTOR OCTEASERVICES LIMITED, OCTEA FOUNDATION LIMITED, THE MANAGING DIRECTOR OCTEAFOUNDATION LIMITED, KOIDU LIMITED, THE MANAGING DIRECTORKOIDU LIMITED

WE COMMAND YOU that within 14 days after service of the Writ on you, exclusive of the day of such service, you do cause an appearance to be entered for you in the High Court of Sierra Leone in an Action at the suit of SIA JANET BAYOH & 8 OTHERS and pursuant to the Consolidated Order

of the Hon. Justice Unisa Kamara (J), Dated: the 16th day of June, 2021 . And Take Notice that in default of your so doing the Plaintiff may proceed herein and judgment may be given in your absence.

WITNESS the Honorable MR.JUSTICE DESMOND BABATUNDE EDWARDS, Chief Justice of the Republic of Sierra Leone, the day of in the Year of our Lord, 2021.

------------------------------------------------------

MASTER AND REGISTRAR

N.S

This Writ is to be served within twelve calendar months, from the date thereon, or if renewed, within six calendar months from the date of such renewal, inclusive of the day of such date, and not afterwards. The Defendant may appear hereto by entering an Appearance either personally or by a Solicitor at the Master's Office, High Court of Sierra Leone Makeni District Registry.

A Defendant appearing personally may, if he desires, enter his appearance by post and appropriate forms may be obtained by sending a postal order for Le300.00 with an addressed envelope, foolscap size, to the Master and Registrar, High Court Makeni District Registry.

If the Defendant enters an appearance, he must also deliver a Defence within ten (10) days from the last day of the time limited for appearance unless such time is extended by the Court or a judge; otherwise judgment may be entered against him without notice, unless he has in the meantime been served with a summons for judgment.

**STATEMENTS OF CLAIM OF SIA JANNET BAYO**

The Plaintiffs Claim against the Defendants jointly and/or severally and in the following Individual Statement of Claim are:

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

**PARTICULARS OF CLAIM OF SIA JANNET BAYO**

1. That until she was resettled in 2016, the Plaintiff was a resident and a fee simple owner of Three Town Lots of land at Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

2. That since resettlement, the Plaintiff has been in occupation of a plot of land in the Resettlement Community at Tripoli in Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

3. That prior to resettlement, Plaintiff was the fee simple owner of 5 houses, 2 private schools, and 2 churches located on her property in Saquee Town.

4. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

5. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th& 11th Defendants respectively.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th Defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. That prior to resettlement, the Koidu Kimberlite Project produced many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions caused dust to enter onto Plaintiff's property, making her cough. The noise and vibrations from the blasts shocked and distressed her, causing chest pains.

12. That the 11th Defendant's mining activities contaminated the water and made it change colour. When Plaintiff and her children drank this water, they would get diarrhoea.

13. The rubble from the 11th Defendant's mining operations covered two town lots of swamp land that Plaintiff previously farmed and engulfed two town lots of land that she had inherited from her sister.

14. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012 – wherein the 11th Defendant covenants inter alia 'to use all reasonable endeavours to resettle all duly affected households and to pay monetary compensation to each affected town…' same including the Plaintiff herein.

15. According to the said RAP, and the International Standards that the Defendants are required to follow pursuant to the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

16. That beginning in 2010, the 11th Defendant tried to induce Plaintiff and her family to leave their land. Originally, they refused to sign any resettlement agreement or abandon their homes because Defendants had not yet constructed replacement structures at the Resettlement Site, but after representatives of the 11th Defendant pleaded with her husband and promised to replace all their structures, he signed an Agreement.

17. That when they inspected the Resettlement Site, Plaintiff and her husband discovered that the replacement structures were smaller, had fewer rooms, and had been built of inferior materials

than the original ones. Moreover, the 11th Defendant had refused to build a hog pen (piggery) for Plaintiff's pigs. They therefore refused to move from their land.

18. That Representatives of the Defendants came to Plaintiff's home one day and threatened to force her family to relocate.

19. That one night in 2016, when Plaintiff and her family were all in their home, the 11th and 12th Defendants caused a flood of water to be diverted from the mine site directly onto Plaintiff's home. Part of one of her houses collapsed, and 460 of her 600 pigs were killed in the flood.

20. That as a result of this incident and at the Plaintiff's request, the Defendants provided transport for her and her family to move to the Resettlement Site on an emergency basis. However, the vehicle provided failed to transport her remaining pigs that survived the flood and instead dropped them off on the side of the road.

21. That she was eventually able to charter a new vehicle, but in the ensuing chaos and confusion, 25 additional pigs died. Only 115 of her original 600 pigs arrived at the Resettlement Site alive.

22. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from pigs
    c. Loss of valuable structures
    d. Nuisance/interference with enjoyment of property
    e. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES SIA JANNET BAYO**

1. Loss of income from pigs since 2016 at Le 139,680,000 (Le 96,000 per year per pig x 485 lost pigs x 3 years)

**PARTICULARS OF EMOTIONAL DISTRESS SIA JANNET BAYO**

1. Plaintiff was distraught due to the repeated efforts of the Defendants to evict her from her land, including Defendants' malicious decision to divert flood waters onto her land.

2. Plaintiff was distressed by the sudden death of most of her pigs – her primary source of income – in the flood caused by the Defendants.

3. Before she was resettled Plaintiff was frequently troubled by the sounds and vibrations from Defendants' blasting, which shocked her and gave her chest pains.

**PARTICULARS OF NUISANCE SIA JANNEY BAYO**

1. Defendants' blasting operations and trucks caused dust and noxious fumes to enter upon Plaintiff's land. These nuisances caused respiratory and skin illnesses and interfered with her enjoyment of his property.

2. Defendants' blasting operations create noise pollution that entered onto Plaintiff's land prevented her from enjoying her land peaceably.

**<u>WHEREFORE THE PLAINTIFF CLAIMS</u>:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..................................

**COUNSEL**

**STATEMENTS OF CLAIM OF TAMBA PRINCE BOIMA**

The Plaintiffs Claim against the Defendants jointly and/or severally and in the following Individual Statement of Claim are:

1. General Damages
2. Special Damages
3. Damages for extreme emotional distress
4. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
5. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
6. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
7. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
8. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
9. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
10. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
11. Damages for Nuisance suffered by the Plaintiffs.
12. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
13. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
14. Any further or other Order(s) as this Honourable Court may deem fit and just.
15. Costs

**PARTICULARS OF CLAIM TAMBA PRINCE BOIMA**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of approximately 3 acres of land situated at 19 Gbense Gbombu Street, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone, where the 11th and 12th Defendants operates a mining concession
2. That the Plaintiff is and was at all material times the fee simple owner of 8 homes, one flat, two hog pens, and a rice mill located on the said property.
3. That the 1st, 3rd, 5th, 7th, and 9th Defendants are a group of Mining Companies operating through the 11th and 12th Defendants herein that engages in Mining Activities in the Tankoro and Gbense Chiefdoms respectively, in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th& 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District where the Plaintiff resides and owns properties.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked multiple structures that he owns, once causing the interiors of one of his properties to collapse.

12. That the water table has been disturbed by the Defendants' activities, and the land has become dryer and less productive. The Plaintiff's economic trees bear significantly fewer yields, only yielding once a year now instead of twice, and in smaller quantities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. He can no longer sustain a sufficient income from his rice mill because farmers no longer bring their rice to his mill out of fear of the earth tremors and dust from the explosions.

14. That the Plaintiff was previously able to rent out 36 rooms to tenants, but he can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012 – wherein the 11th and 12th Defendants covenants inter alia 'to use all reasonable endeavours to resettle all duly affected households and to pay monetary compensation to each affected town…' same including the Plaintiff herein.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th& 12thDefendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff to assess his property, telling him that they would pay him for the crops and economic trees he would lose when relocated.

19. After the property assessment, the Plaintiff was told that he was entitled to a total of Le 71,000,000/00 for his properties, crops and trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate him after this time. He continues to live in his homes – which have been damaged by the defendants' explosions – on his land, where he lives in constant apprehension of the dust and tremors from the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

a. Extreme emotional distress and psychological harm
b. Loss of income from farming
c. Loss of income from economic trees
d. Loss of rental income from letting out of rooms in their homes to tenants
e. Nuisance/interference with enjoyment of property
f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES TAMBA PRINCE BOIMA**

1. Plaintiff's loss of rental income at Le 97,200,000.00 (Le 25,000 x 12 months x 36 rooms x 9 years)

2. Plaintiff's loss of income from economic trees at Le 90,000,000.00 (Le 6,000,000 – Le 1,500,000) x 20 years average productive lifespan)

**PARTICULARS OF EMOTIONAL DISTRESS TAMBA PRINCE BOIMA**

1. Plaintiff is subjected to distress from seeing his community abandoned and left to decline from the vibrant area into a ghost town.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**WHEREFORE THE PLAINTIFF CLAIMS**:

1. General Damages

2. Special Damages

3. Damages for extreme emotional distress

4. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

5. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

6. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

7. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

8. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

9. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

10. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

11. Damages for Nuisance suffered by the Plaintiffs.

12. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

13. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

14. Any further or other Order(s) as this Honourable Court may deem fit and just.

15. Costs

………………………………

**COUNSEL**

## STATEMENTS OF CLAIM OF KUMBA KING

The Plaintiffs Claim against the Defendants jointly and/or severally and in the following Individual Statement of Claim are:

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

## PARTICULARS OF CLAIM OF KUMBA KING

1. That the Plaintiff is and was at all material times a resident and fee simple owner of four (4) Town Lots of land situated at 16 Jabba Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of four (4) homes located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants mMineral rRights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. The Defendants frequently detonate powerful explosives. These explosions have expelled dust particles into the air that impaired the Plaintiff's eyesight, for which she required professional medical assistance. They have shaken and cracked her walls, and she had to repair the damages without assistance or compensation from the defendants. They have also caused hearing loss in Plaintiff and cause her to live in a constant nervous state.

12. The Defendant also dumped large rocks and rubble from its operations into a swamp area that the Plaintiff previously possessed and used for rice and vegetable farming. It has been buried under rocks, and she has been forced to seek other land to continue her farming activities, even going to another village.

13. The area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She was previously able to rent out twelve bedrooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

14. The Plaintiff used to be part of a society that met in a sacred area that included a burial site for the members. Since the defendants have covered the area with artificial mounds, she is distressed because she has lost the ability to practice her traditional culture.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are is required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP, and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That representatives of the 11th defendant visited Plaintiff to assess her property, telling her they would compensate her for her crops in recurring payments every five years.

19. After the property assessment, the Plaintiff was eventually paid a total of 60 Million Leones – an amount that is lower than the value of her crops and numerous economic trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she lives in constant apprehension of the blasting and struggles to make an adequate income.

21. That the Defendants also failed to compensate her for the land they buried with rubble and rocks from their operations, or for the financial burden the Plaintiff must now bear to travel to another village in order to farm crops

22. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES KUMBA KING**

1. Plaintiff's loss of 38,880,000 Leones in rental income (30,000 Leones x 12 months x 12 rooms x 9 years)

2. Plaintiff's expenditure of 1,000,000 Leones to repair her home that was damaged by defendants' explosions

3. Plaintiff's loss of 80,000,000 Leones in crops and economic trees (Le 1,500,000 of corn + Le 700,000 of onion +Le 900,000 of groundnut + 600,000 Leones of bananas + Le 1.2 Million of mangos + Le 550,000 of pears + Le 400,000 of palm +Le 350,000 of orange + Le 800,000 of guava = Le 7,000,000 per annum. Le 7,000,000 x average 20 years lifespan = 140 Million Leones. Le 140,000,000 - 60,000,000 Leones in compensation received = 80,000,000).

**PARTICULARS OF EMOTIONAL DISTRESS KUMBA KING**

1. Plaintiff suffers from emotional distress due to her inability to access the Bondo bush and practice her traditional culture.

2. Plaintiff is subjected to constant apprehension or fear of mandatoryevacuations due to blasting.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..................................

**COUNSEL**

**STATEMENTS OF CLAIM FATU SAM**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM FATU SAM**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 1 Renner Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.
2. That the Plaintiff is and was at all material times the fee simple owner of 2 homes located on the said property.
3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.
5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9thDefendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th& 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls, once causing one of her houses to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and vegetable farming. The water diversion has completely flooded the swamp and the water is full of rock particles, making it impossible for her to continue her farming activities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She can no longer carry on her trading activities because there is not enough traffic.

14. That the Plaintiff was previously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by the explosion.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two (2) Resettlement Action Plan (RAP)Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

19. After the property assessment, the Plaintiff was given a voucher pursuant to which she was eventually paid a total of Le 5,140,000, an amount that is considerably lower than the value of her crops and economic trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

   a. Extreme emotional distress and psychological harm
   b. Loss of income from economic trees
   c. Loss of rental income from letting out of rooms in their homes to tenants
   d. Nuisance/interference with enjoyment of property
   e. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES FATU SAM**

1. Plaintiff's loss of rental income at Le 15,000,000 (for 9 years)

2. Plaintiff's expenditure of Le 1,000,000 to repair her home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from economic trees at Le 21,000,000 (Le 400,000 per year per Mango Tree x 3 trees x 20 years), minus Le 3,000,000 received in compensation.

**PARTICULARS OF EMOTIONAL DISTRESS FATU SAM**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary.This state of uncertainty has destroyed her community and her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**WHEREFORE THE PLAINTIFF CLAIMS:**

17. General Damages

18. Special Damages

19. Damages for unlawful deprivation of property

20. Damages for extreme emotional distress

21. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

22. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

23. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

24. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

25. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

26. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

27. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

28. Damages for Nuisance suffered by the Plaintiffs.

29. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

30. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

31. Any further or other Order(s) as this Honourable Court may deem fit and just.

32. Costs

……………………………

**COUNSEL**

**STATEMENTS OF CLAIM ISATA FILLIE**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM ISATA FILLIE**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 1.5 Town Lots of land situated at No. 1 Yorka Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.
2. That the Plaintiff is and was at all material times the fee simple owner of 3 homes located on the said property.
3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.
5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls, once causing one of her houses to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and vegetable farming. The water diversion has completely flooded the swamp and the water is full of rock particles, making it impossible for her to continue her farming activities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She can no longer carry on her trading activities because there is not enough traffic.

14. That the Plaintiff was previously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its their mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

19. After the property assessment, the Plaintiff was given a voucher pursuant to which she was eventually paid a total of Le 5,140,000 an amount that is considerably lower than the value of her crops and economic trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES ISATA FILLIE**

1. Plaintiff's loss of rental income at Le 17,280,000 (Le 20,000 x 12 months x 8 rooms x 9 years)

2. Plaintiff's expenditure of Le 1,000,000 to repair her home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from economic trees at Le 21,860,000 (Le 400,000 per year per Mango Tree x 2 trees x 20 years, plus Le 550,000 per year per Tombi Tree x 1 tree x 20 years, minus Le 5,140,000 compensation received).

**PARTICULARS OF EMOTIONAL DISTRESS ISATA FILLIE**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary. This state of uncertainty has destroyed her community and her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night.

**<u>WHEREFORE THE PLAINTIFF CLAIMS</u>:**

33. General Damages

34. Special Damages

35. Damages for unlawful deprivation of property

36. Damages for extreme emotional distress

37. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

38. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

39. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

40. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

41. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

42. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

43. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

44. Damages for Nuisance suffered by the Plaintiffs.

45. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

46. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

47. Any further or other Order(s) as this Honourable Court may deem fit and just.

48. Costs

..................................

**COUNSEL**

**STATEMENTS OF CLAIM TAMBA SUPER MABAY**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM TAMBA SUPER MABAY**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 14 Jabba Street, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.
2. That the Plaintiff is and was at all material times the fee simple owner of 3 homes located on the said property.
3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.
4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.
5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked the walls of his houses. And they leave the Plaintiff in a prolonged state of anxiety, as the company can detonate explosives at any time during the day or night.

12. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. He no longer carries on his daily activities (teaching and preparing private pupils for External Examination) because many people have deserted the area and relocated to safe places within the town.

13. That the Plaintiff was previously able to rent out 6 rooms to tenants but can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

14. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th& 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan (RAP) Documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

15. On May 13, 2017, the 11th& 12th Defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs – the 11th & 12th Defendant are required to follow Sierra Leone law and International Standards with respect to all its Mining Activities.

16. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

17. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess his crops and property. The aforesaid Defendants further promised the Plaintiff that if he was relocated, scholarships would be provided for his siblings and would be relocated the relocation would occur shortly within 1 year 6 months, but up till now, that has not been done.

18. After the property assessment and crop valuation, the Plaintiff was given a voucher pursuant to which he was eventually paid a total sum of Le 7,000,000, an amount that is considerably lower than the value of his crops and economic trees.

19. That the Defendants never contacted Plaintiff or attempted to relocate him after several frantic efforts made by him. He continues to live in his compound (which has been damaged by the Defendants' explosions), and he remains terrorized by the explosions, and is no longer able to make an adequate income.

20. As a result of these impacts, the Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from farming
    c. Loss of income from economic trees
    d. Loss of rental income from letting out of rooms in their homes to tenants
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES TAMBA SUPER MABAY**

1. Plaintiff's loss of rental income at Le 16,200,000 (Le 25,000 x 12 months x 6 =rooms x 9 years)

2. Plaintiff's loss of income from economic trees at Le 6, 400,000 (yearly) x 20 years= Le 29,200,000
    a. 4 Mango Trees: Le 100,000 per year x 4 trees x 20 years = Le 8,000,000
    b. 4 Orange trees: Le 50,000 per year x 4 trees x 10 years = Le 2,000,000
    c. 4 Palm trees: Le 20,000 per year x 4 trees x 10 years = Le 800,000
    d. 2 Pea tree: Le 40,000 per year x 4 trees x 10 years = Le 1,600,000
    e. 2 Sweet Sharp tree: Le 20,000 per year x 4 trees x 15 years = Le 1,200,000

    (Less Le 7,000,000 compensation received)

**PARTICULARS OF EMOTIONAL DISTRESS TAMBA SUPER MABAY**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the Defendants could come at any moment and force him to leave his land and property. He is unable to move forward because there is no suitable resettlement home prepared for him, and he also cannot maintain, repair, or improve his current home and land because he knows that his residency there is only temporary. This state of uncertainty has destroyed his community and peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time during the day or night.

**WHEREFORE THE PLAINTIFF CLAIMS**:

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

..................................

**COUNSEL**

## STATEMENTS OF CLAIM ADIKALIE BANGURA

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

## PARTICULARS OF CLAIM ADIKALI BANGURA

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 9 Jabbah Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of 1 home located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused stones to fall on Plaintiff's home. Before the blasting moved underground two years ago, the constant barrage damaged his zinc roof repeatedly.

12. That on one occasion, a stone crashed through his wall, destroying personal property including a television and a computer. On another occasion, stones from the mine destroyed two rooms of his house, which he has never had the resources to repair.

13. That the above-ground blasting – now discontinued – and the dust that Defendants' trucks kick up as they speed down the road that runs between his house and the mining rubble pile frequently cause dust to rain down on Plaintiff and his property, leaving white patches on his skin that erupt into itchiness and rashes.

14. That Plaintiff is an herbalist who harvested plants and leaves from his around his home to make traditional medicines. Since the Koidu Kimberlite Project began, water has been scarce on his property and soil fertility has dropped. The leaves and herbs no longer grow, and as a result his income has been reduced.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law.

1. In furtherance of the fulfilment of this obligation, it produced 2 two Resettlement Action Plan (RAP) Documents (RAP) – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That beginning in 2010, the Defendants attempted to induce Plaintiff to leave his home so they could take over his land. First, representatives of the 11th Defendant came to his land to assess his home, but he refused to accept the assessment because there was no home for him in the relocation site.

19. That the Defendants' efforts to evict Plaintiff became increasingly extreme. Acting through their allies, the Town Chief and the Paramount Chief, they caused him to be brought to court for eviction, but the court ruled in his favour. They also fraudulently attempted to pay his son and ex-wife for his crops and property in his stead, without his permission.

20. That the Defendants entered onto Plaintiff's land with a bulldozer, installed a boundary marker in the middle of his land, and destroyed 15 of his economic trees without compensation. The Defendants built a road on the portion of land that they invaded.

21. Defendant continues to live in his home, on his land, where he cannot afford to repair his blast-damaged house and is no longer able to make an adequate income.

22. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from economic trees
    c. Loss of income as an herbalist
    d. Expenditures to repair his home
    e. Nuisance/interference with enjoyment of property
    f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES ADIKALIE BANGURA**

1. Plaintiff's loss of income from economic trees destroyed by Defendants' bulldozers at Le 80,000,000 (Le 450,000 per orange tree per year x 20 years x 5 trees, plus Le 400,000 per mango tree per year x 20 years x 4 trees, plus Le 50,000 per guava tree per year x 10 years x 6 trees)

2. Plaintiff's expenditure of Le 4,000,000 to repair his home that was damaged by defendants' explosions.

3. Plaintiff's loss of income from herbalist practice as a result of disappearance of leaves and plants due to diminished water supply caused by Defendants' mining activities at Le 81,000,000 (reduction of Le 9,000,000 per year x 9 years)

**PARTICULARS OF EMOTIONAL DISTRESS ADIKALIE BANGURA**

1. Plaintiff is in a constant state of worry because he knows that the Defendants' mining activities are causing physical harm to his body. He is exposed to chemicals and dust from the trucks, the blasting, and the mining effluent, and he cannot get adequate or clean water on his land anymore. This creates a lot of stress for him.

2. Defendants caused the Plaintiff severe emotional distress when they fraudulently tried to induce his son and ex-wife to accept payment for his own property and confronted him with evidence that the son and ex-wife had in fact improperly accepted the compensation.

**PARTICULARS OF NUISANCE ADIKALIE BANGURA**

1. Defendants' blasting operations and its trucks, which speed down the road that passes just behind Plaintiff's house, cause dust and noxious fumes to enter upon Plaintiff's land. These nuisances cause respiratory and skin illnesses and interfere with his enjoyment of his property.

2. Defendants' blasting operations create noise pollution that enters onto Plaintiff's land prevents him from enjoying his land peaceably.

3. Defendants' above-ground blasting operations caused stones to fly onto Plaintiff's property, damaging his home and disturbing his peace of mind.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

………………………………

**COUNSEL**

**STATEMENTS OF CLAIM MEMUNATU JALLOH**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

**PARTICULARS OF CLAIM MEMUNATU JALLOH**

1. That the Plaintiff is and was at all material times until resettlement a resident and fee simple owner of 3 Town Lots of land situated at Gandor Park, Saque Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

3. That the Plaintiff is and was at all material times the fee simple owner of 2 houses located on the said property.

4. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District, in the Eastern Province of the Republic of Sierra Leone.

5. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

6. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

7. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

8. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

9. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

10. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

11. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and her property.

12. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

13. That the 11th Defendant frequent blasting results to the loss of plaintiff's properties in phones, sheeps and money also making it impossible for her to continue her plantation/farming activities.

14. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area and can no longer carry on her farming activities

15. That the Plaintiff was previously able to rent out 4 rooms to tenants, but she can no longer do so because nobody wants to live close to the mine site, in a zone that is so frequently shaken by explosions.

16. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced 2 Resettlement Action Plan Documents (RAP) – an Original RAP in 2003 and an Upgraded RAP in 2012.

17. On May 13, 2017, the 11th & 12th defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th & 12th Defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

18. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

19. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling her that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

20. After the property assessment, the Plaintiff was given a voucher pursuant to which she was eventually paid a total of Le 4,250,000 an amount that is considerably lower than the value of her crops and economic trees.

21. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

22. That the Plaintiff thereafter had to resettle herself and family at her own expense with considerable hardship on her part.

23. As a result of these impacts, Plaintiff has suffered in the following ways:

a. Extreme emotional distress and psychological harm
b. Loss of income from economic trees
c. Loss of income as an herbalist
d. Expenditures to repair his home
e. Nuisance/interference with enjoyment of property
f. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES MEMUNATU JALLOH**

1. Plaintiff's loss of rental income at Le 8,640,000 (Le 20,000 x 12 months x 4 rooms x 9 years)

2. Plaintiff's loss of income from the death of 8 sheep due to blasting and flying of rocks at Le: 57,600,000 (Le; 800,000 per sheep x 8 sheep x 9 years)

**PARTICULARS OF EMOTIONAL DISTRESS MEMUNATU JALLOH**

1. Plaintiff lives in a constant state of nervous tension and psychological torture from the knowledge that the defendants could come at any moment and force her to leave her land. She is unable to move forward because no suitable resettlement home has been prepared for her, but she also cannot maintain, repair, or improve her current home and land because she knows that her residency there is only temporary and thus her voluntary resettlement, this state of uncertainty and sole resettlement disintegrate her family and affects her peace of mind.

2. Plaintiff is subjected to constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which come without warning and can happen at any time of day and night before her resettlement.

**WHEREFORE THE PLAINTIFF CLAIMS:**

1. General Damages

2. Special Damages

3. Damages for unlawful deprivation of property

4. Damages for extreme emotional distress

5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements

6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land

8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.

9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010

11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Damages for Nuisance suffered by the Plaintiffs.

13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)

14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.

15. Any further or other Order(s) as this Honourable Court may deem fit and just.

16. Costs

………………………………

**COUNSEL**

**STATEMENTS OF CLAIM ABDULAI KAMARA**

1. Deprivation of Property

2. Special Damages

3. Failure to comply with the MMA 2009

4. Enforcement of the MMA 2009

5. Specific Performance of the Mining Lease Agreement

6. Abatement of the nuisance

7. Accounting of compliance with Article 15.13 of the Mining Lease Agreement

8. Specific Performance of the 2012 extended RAP Agreement,

9. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License and renewal Licenses.

10. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)

11. Damages for Nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.

12. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment

13. Any further or other Order(s) as this Honourable Court may deem fit and just.

14. Costs

**PARTICULARS OF CLAIM ABDULAI KAMARA**

1. That the Plaintiff is and was at all material times a resident and fee simple owner of 2 Town Lots of land situated at No. 10 Jabba Street, Saquee Town, Tankoro Chiefdom, Koidu Town, Kono District, in the Eastern Province of the Republic of Sierra Leone.

2. That the Plaintiff is and was at all material times the fee simple owner of 2 homes located on the said property.

3. That the 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

4. That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

5. In 2003, the 11th Defendant, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

6. The said Mining Lease Agreement granted the Defendants Mineral Rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the Plaintiff resides and owns properties.

7. The 1st Defendant has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise, by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the Plaintiff and his property.

11. That the 11th Defendant frequently detonates powerful explosives. These explosions have caused dust and particles to fall on Plaintiff's home. They have shaken and cracked her walls, once causing one of her houses to collapse. And they leave her in a prolonged state of anxiety, as the company can detonate explosives at any time, day or night.

12. That the 11th Defendant also diverted water into a swamp area that Plaintiff previously possessed and used for rice and vegetable farming. The water diversion has completely flooded the swamp and the water is full of rock particles, making it impossible for her to continue her farming activities.

13. That the area where Plaintiff lives is now largely deserted and is no longer a commercially vibrant area. She can no longer carry on her trading activities because there is not enough traffic.

14. That the Plaintiff was previously able to rent out 8 rooms to tenants, but she can no longer do so because nobody wants to live so close to the mine site, in a zone that is so frequently shaken by explosions.

15. Knowing that the people living in the areas surrounding the mine would suffer some or all of these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it they produced 2 two Resettlement Action Plan Documents (RAP) documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

16. On May 13, 2017, the 11th& 12th Defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs, the 11th is required to follow Sierra Leone law and International Standards with respect to all its mining activities.

17. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity started to affect their lives.

18. That Representatives of the 11th Defendant visited Plaintiff in 2010 to assess her property, telling him that they would pay her for the crops and economic trees she would lose when relocated and that she would be relocated within five years. They also told her that if she was not relocated within five years, her property would be reassessed, and the company would begin paying rent for the use and impacts on her land.

19. After the property assessment, the Plaintiff was given a voucher pursuant to which she was eventually paid a total of Le 3,000,000, an amount that is considerably lower than the value of her crops and economic trees.

20. That the Defendants never contacted Plaintiff or attempted to relocate her after this time. She continues to live in her homes – which have been damaged by the defendants' explosions – on her land, where she remains terrorized by the explosions and is no longer able to make an adequate income.

21. As a result of these impacts, Plaintiff has suffered in the following ways:

    a. Extreme emotional distress and psychological harm
    b. Loss of income from economic trees
    c. Loss of rental income from letting out of rooms in their homes to tenants
    d. Nuisance/interference with enjoyment of property
    e. Breach of contract

**PARTICULARS OF SPECIAL DAMAGES ABDULAI KAMARA**

1. Plaintiff's loss of the House that collapsed due to the defendants' blasting of Kimberlite, valued at the time at Le: 50,000,000.

2. The Plaintiff's loss of rental income at Le: 4,320,000 per year since 2010 to the date of this action (for 9 years)

3. Plaintiff's loss of income from economic trees x 20 years at Le: 57,000,000 (Le: 750,000 per year for 3 mango trees x 20 years, plus Le: 750,000 per year for 2 orange trees x 20 years, plus Le; 750,000 per year x 20 years for 2 guava trees), minus Le; 300,000 received)

4. The Plaintiff's loss of crops at Le; 2, 250,000 for nine years (150,000 per year for corns, plus Le 100,000 for grandaunts groundnuts, per year for 9 years)

5. Plaintiff's loss of income from economic trees at Le 21,000,000 (Le 400,000 per year per Mango Tree x 3 trees x 20 years,) minus Le 3,000,000 received in compensation

**PARTICULARS OF NUISANCE ABDULAI KAMARA**

1. Defendants' blasting operations and trucks caused dust and noxious fumes to enter upon Plaintiff's lands. These nuisances caused respiratory and skin illnesses and interfered with her enjoyment of their properties

2. Defendants' blasting operations create noise pollution that entered onto Plaintiff's lands prevented them from enjoying her land peaceably.

**WHEREFORE THE PLAINTIFF CLAIMS:**

The Plaintiffs Claim against the Defendants jointly and/or severally and in the following individual statement of claim are:

1. Deprivation of property
2. Special Damages
3. Failure to comply with the MMA 2009
4. Enforcement of the MMA 2009
5. Specific Performance of the Mining Lease Agreement
6. Abatement of the nuisance
7. Accounting of compliance with Article. 15.13 of the Mining Lease Agreement
8. Specific Performance of the 2012 extended RAP Agreement,
9. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License and renewal Licenses.
10. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
11. Damages for Nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment
13. Any further or other Order(s) as this Honourable Court may deem fit and just.
14. Costs

………………………………

**COUNSEL**

Writ of Summons is issued by C&J Partners whose address for service is No. 1 Flower Corner, Makeni- for and on behalf of the Plaintiffs herein.

| NO | NAME | ADRESS |
|---|---|---|
| 1 | SIA JANNET BAYO | TRIPOLI TANKORO-KOIDU CITY |
| 2 | TAMBA PRINCE BRIMA | 19 GBENSEGBOMBU STREET TANKORO |
| 3 | KUMBA KING | 16 JABBA STREET SAQUE TOWN, KOIDU CITY |
| 4 | FATU SAM | 1 RENNER STREET SAQUE TOWN KOIDU CITY |
| 5 | ISATA FILLIE | 1 KEISTER STREET, KOIDU CITY |
| 6 | TAMBA SUPER MABAY | 14 JABBA STREET KOIDU CITY |
| 7 | ADIKALIE BANGURA | 9 JABBA STREET SAQUE TOWN, KOIDU CITY |
| 8 | MEMUNATU JALLOH | GANDOR PARK/ KAIMBADU RESETTLEMNT |
| 9 | ABDULAI KAMARA | 10 JABBA STREET SAQUETOWN KKOIDU CITY |

..........................

COUNSEL

IN THE CONSOLIDATED MATTERS OF SIA JANET BAYO, CC: 18/ B 2019, B; NO: 5 TAMBA PRINCE BOIMA CC: 17 E 2019 B NO. 4; KUMBA KING CC 16 E K NO. 3; FATU SAM CC: 22 E 2019 S NO.9; ISATA FILLIE CC: 23 E F 2019 NO.10; TAMBA SUPER MABAY CC24 E M 2019 NO.4; ADIKALIE BANGURA CC 15 E B 2019 NO. 2; MEMUNATU JALLOH CC: 21 E J 2019 NO. 7; AND ABDULAI KAMARA CC20/19E K, 2019 NO.7; - PURSUANT TO THE ORDER OF THE HON. MR. JUSTICE UNISA KAMARA (J) DATED: THE 16TH DAY OF JUNE 2021.

**CC: B 2021 NO :**

**IN THE HIGH COURT OF SIERRA LEONE**
**MAKENI DISTRICT REGISTRY**
**(COMMERCIAL AND ADMIRALITY DIVISION)**

Sierra Leone
(TO WIT)
BETWEEN:

| | |
|---|---|
| SIA JANET BAYOH & 8 OTHERS<br>TRIPOLI-TANKORO<br>KOIDU | PLAINTIFF |

AND

| | |
|---|---|
| OCTEA LIMITED | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5thDEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11thDEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

---

WRIT OF SUMMONS

---

This Writ of Summons was served by on The Defendants
On the day of 2021
Dated this: day of 2021
**Address:**
**Signed:**

-------------------------

C & J PARTNERS
1 FLOWER CORNER
MAKENI

# EXHIBIT 2

**IN THE CONSOLIDATED MATTERS OF CC: 19/19, F; NO:6-AIAH FENGAI AND 73 OTHERS & CC: 12/20, M; NO:9-MORIE MOMOH AND 14 OTHERS & MARGINALISED AFFECTED PROPERTY OWNERS (LG)**

CC: 11/21 2021 F. NO: 2

**IN THE HIGH COURT OF SIERRA LEONE**
**(GENERAL CIVIL DIVISION)**
**(MAKENI DISTRICT REGISTRY)**

HIGH COURT SIGN DATE 27/8/21 MAKENI

**SIERRA LEONE**
(TO WIT)
**BETWEEN:**

| | |
|---|---|
| AIAH FENGAI AND 73 OTHERS<br>3 RENNER STREET, (NO: 9)<br>KOIDU CITY | 1ST PLAINTIFFS |
| MORIE MOMOH AND 14 OTHERS<br>A 2/3 RESETTLEMENT<br>KOIDU CITY | 2ND PLAINTIFFS |
| MARGINALISED AFFECTED PROPERTY OWNERS (LG)<br>19 GBENSE NGUMBU STREET<br>TANKORO<br>KOIDU CITY | 3RD PLAINTIFFS |

**AND**

| | |
|---|---|
| OCTEA LTD | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11th DEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

*Head of State, Grand Commander of the Order of the Republic, Commander-in-Chief of the Armed Forces, Fountain Head of Unity, Honour, Freedom and Justice.*

TO: **OCTEA LIMITED, THE MANAGING DIRECTOR OCTEA LIMITED, OCTEA DIAMOND LTD, THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED, OCTEA MINING LIMITED, THE MANAGING DIRECTOR OCTEA MINING LIMITED, OCTEA SERVICES LIMITED, THE MANAGING DIRECTOR OCTEA SERVICES LIMITED, OCTEA FOUNDATION LIMITED, THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED, KOIDU LIMITED, THE MANAGING DIRECTOR KOIDU LIMITED**

WE command you that within 14 days after service of the Writ on you, exclusive of the day of such service, you do cause an appearance to be entered for you in the High Court of Sierra Leone in an Action at the suit of the Consolidated matters of AIAH FENGAI and 73 and Morie Momoh and 14 others , and Take Notice that in default of your so doing the Plaintiffs may proceed herein and judgment may be given in your absence.

WITNESS the Honorable **MR. JUSTICE DESMOND BABATUNDE EDWARDS**, Chief Justice of the Republic of Sierra Leone, on the day of in the Year of our Lord, 2021.

HIGH COURT
DATE
MASTER AND REGISTRAR
MAKENI

**N.S**

This Writ is to be served within twelve calendar months, from the date thereon, or if renewed, within six calendar months from the date of such renewal, inclusive of the day of such date, and not afterwards. The Defendant may appear hereto by entering an Appearance either personally or by a Solicitor at the master's office, High Court of Sierra Leone Makeni District Registry .

A Defendant appearing personally may, if he desires, enter his appearance by post and appropriate forms may be obtained by sending a postal order for Le300.00 with an addressed envelope, foolscap size, to the Master and Registrar, High Court Makeni District Registry.

If the Defendant enters an appearance, he must also deliver a Defence within ten (10) days from the last day of the time limited for appearance unless such time is extended by the Court or a judge; otherwise judgment may be entered against him without notice, unless he has in the meantime been served with a summons for judgment.

## STATEMENT OF CLAIM

This is a class action claim for damages and declaratory and other forms of relief. The Plaintiffs' claims against the Defendants jointly and/or severally are for the following:

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation and or destruction of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.

7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

## PARTICULARS OF CLAIM

**1.** That at all material times the 1st Plaintiffs are a class composed of current members of the Marginalised Affected Property Owners, a company Limited by Guarantee organised under the Laws of Sierra Leone. They are all individuals living in Tankoro or Gbense Chiefdoms, Kono District, in the Eastern Province of the Republic of Sierra Leone, who have suffered any or all of the following damages as a result of the Defendants' Mining Activities:

i. Degradation, destruction, and/or deprivation of land;
ii. Damage to or destruction of homes, other structures, and other property;
iii. Loss of livelihoods and sources of income;
iv. Invasion of noxious fumes and dust, as well as noise pollution, causing health problems and emotional distress; and
v. Loss of cultural and religious sites.

**2.** The 2nd Plaintiff is and was at all material times a Company Limited by Guarantee, registered in Sierra Leone with the object to promote Access to Justice, Remedy and Reparation for its members, the 1st Plaintiffs.

**3.** The 1st, 3rd, 5th, 7th, 9th & 11th Defendants are a group of Mining Companies engaged in Mining Activities in the Tankoro and Gbense Chiefdoms respectively in Kono District in the Eastern Province of the Republic of Sierra Leone.

**4.** That the 2nd, 4th, 6th, 8th, 10th & 12th Defendants are Managing Directors of the 1st, 3rd, 5th, 7th, 9th & 11th Defendants respectively.

**5.** In 2003, the 11th Defendant or its predecessor, on behalf of the 1st, 3rd, 5th, 7th, and 9th Defendants or their predecessors, entered into a Mining Lease Agreement with the Government of Sierra Leone that was revised, amended and updated in 2010.

**6.** The said Mining Lease Agreement granted the Defendants mineral rights over the concession areas of Tankoro and Gbense Chiefdoms respectively, within which the members of the Plaintiff Class reside and own properties.

7. The 1st Defendant or its predecessor has at all material times (and jointly with the 5th Defendant, since 2011) been the owner of all mining assets including the Koidu Kimberlite Project in Koidu operated by the 11th & 12th Defendants.

8. The 1st, 3rd, 5th, 7th, 9th, and 11th defendants are all under common control and are operated as a joint enterprise by their parent company, BSG Resources Ltd., and the operations complained of in this Statement are personally directed by the 2nd, 4th, 6th, 8th, 10th, and 12th Defendants, respectively.

9. The 1st and 5th Defendants – Octea Ltd. and Octea Mining Ltd., respectively – control the financial decisions of the 11th Defendant – their subsidiary, Koidu Ltd. – and are directly involved in the resettlement of affected communities in Tankoro and Gbense Chiefdoms of Kono District.

10. The Koidu Kimberlite Project produces many severe impacts on the land and settlements in its immediate vicinity, including:
    i.   Frequent blasting with powerful explosives, which interrupts people's lives by dangerously shaking houses, creates loud noise that produces serious disturbances to the emotional and physical wellbeing of people living in nearby homes, causes rubble and dust to rain down on the nearby area, and cracks walls and foundations of structures in the immediate vicinity;
    ii.  Dumping of stones and rubble, which engulfs local residents' farmland;
    iii. Transportation of mining materials by heavy trucks, which kicks up dust that is inhaled by locals and affects their skin and respiratory systems;
    iv.  Dumping and emission of toxic mine waste and effluent, which reduces the fertility of the surrounding lands and pollutes their sources of water;
    v.   Disturbance of the water table, decreasing the fertility of the surrounding lands and reducing availability of water for farming and household use.

11. Knowing that the people living in the areas surrounding the mine would suffer some or all these impacts, the 11th & 12th Defendants knew that they would be required to create a program to resettle the affected population pursuant to Sierra Leone Law. In furtherance of the fulfilment of this obligation, it produced two Resettlement Action Plan (RAP) documents – an Original RAP in 2003 and an Upgraded RAP in 2012.

12. On May 13, 2017, the 11th & 12th Defendants entered into the latest of a series of Community Development Agreements (CDAs) with representatives of Tankoro and Gbense Chiefdoms for the benefit of the people of the two Chiefdoms. According to this Agreement – and, on information and belief, all the previous CDAs – the 11th & 12th defendants are required to follow Sierra Leone law and International Standards with respect to all its mining activities.

13. According to the said RAP and the International Standards that the Defendants are required to follow pursuant to the Mining Lease Agreement, the CDA, and Sierra Leone law, the persons in zones that were likely to be affected by the mining operations were to be resettled on appropriate land with adequate structures and facilities before mining activity

started to affect their lives. In reality, few – if any – people in the affected zones were resettled beforehand.

**14.** That the 1st Plaintiffs were not resettled before mining operations began in their areas, and as a result they did in fact suffer the impacts and injuries described *supra* paragraph 10.

**15.** That the Resettlement Site designated by the Defendants is very far from the markets and other public facilities to which the 1st Plaintiffs have been accustomed, and many of them do not yet have new homes in the Resettlement Site. As a result, many members of the Plaintiff Class have never been relocated and remain in their old homes. These people continue to be subjected every day to the harms described *supra* paragraph 10.

**16.** That some members of the Plaintiff's Class were in fact resettled after the Defendants' mining activities had already begun to affect their lives. However, the Plaintiffs suffered further economic and emotional injury as a result of the Defendants' conduct of the Resettlement Process.

**17.** That the 11th & 12th Defendants offered some members of the Plaintiff Class compensation for the crops and economic trees they would lose upon resettlement. The 11th & 12th Defendants failed, refused and /or neglected to enumerate or assess the actual market value of these crops and economic trees; they simply offered a lump sum that was invariably much less than the actual value. Some members of the Plaintiff Class often accepted this offer because they believed they had no choice; others resisted and, in the end, were forced to move without any crop compensation at all.

**18.** That the 11th & 12th Defendants have built houses at the Resettlement Site for some of the members of the Plaintiff Class. The Defendants did not, however, build houses that were commensurate to those that the Plaintiffs had previously enjoyed. In many cases, the resettlement houses are smaller and made of inferior materials to the plaintiffs' original houses. Moreover, some of the Plaintiffs had multiple houses or other buildings in their original settlement, but the Defendants only built one house for them at the Relocation Site. Furthermore, some Plaintiffs have been resettled closer to the Defendants' Mine Site.

**19.** Many of the members of the Plaintiff Class (particularly women and children) have suffered serious economic dislocation, with clear negative impact to their physical and mental health and their financial position. For example, as the mine's activities have caused wells to dry up, women must walk farther to fetch water by hand, thereby decreasing the time they have for economic activities and causing physical injury to their bodies.

**20.** That other women of the Plaintiff class whose farmland and productive swamps were either covered by rubble or contaminated by mining activities have been forced to abandon agriculture. Many of them are now reduced to scavenging stones from the defendants' rubble pile and breaking them into gravel with hand-tools for sale to construction crews. This work is physically and emotionally debilitating.

**21.** As a result of these impacts, the members of the Plaintiff Class have suffered in the following ways:

i. Physical pain and suffering

    ii. Extreme emotional distress and psychological harm
iii. Loss of income from farming and animal rearing
iv. Loss of income from economic trees and crops
v. Loss of rental income from letting out of rooms in their homes to tenants
vi. Loss of access to ritual, religious, and ancestral sites
vii. Nuisance/interference with enjoyment of property
viii. Medical costs

**22.** That pursuant to the current CDA of 2017 and all previous CDAs, a Community Development Agreement Fund was to be created, which would be financed by "funds provided in pursuance of the mining lease agreement signed between the mineral right holder and the Government of Sierra Leone." This provision refers to the obligation of the 11th Defendant stipulated in the Mining Lease Agreement to pay an amount equal to 0.25% of revenues annually ("Stipulated Amount") for development of its primary host communities – i.e. Tankoro and Gbense Chiefdoms.

**23.** As far as the members of the Plaintiff Class are aware, however, the Stipulated Amount has rarely – if ever – been paid into the Community Development Agreement Fund. As a result, Mining Revenues are not contributing to local development as envisaged in the CDA.

## PARTICULARS OF EMOTIONAL DISTRESS

Each member of the Plaintiff Class suffers extreme emotional distress as a result of the Defendants' Mining Activities. This said distress arises in any or all of the following contexts:

i. Inability to take care of family members and relatives caused by the loss of rents usually derived from rent of their properties, and deprivation of property and livelihoods.
ii. The persistent uncertainty of continuing to live near the mine, knowing that the defendants may come at any moment to take their home and lands and, therefore, being unsure of whether to maintain, repair, or improve their property.
iii. Constant apprehension or fear resulting from earth tremors caused by the Defendants' underground Kimberlite blasting operations, which disrupt their lives and shake their houses.
iv. **Debilitating and chronic respiratory and skin disorders, elevated stress, and hypertension as a result of constant exposure to dust and noxious fumes.**
v. Mental anguish and cultural dislocation as a result of loss of access to traditional cultural and religious sites, including grave sites, bondo bush, poro bush, and other sites associated with ancestors.

## PARTICULARS OF NUISANCE

The defendants' mining operations continually produce substances and effects that interfere severely with the ability of members of the Plaintiff Class to enjoy their own property. In particular:

i. The frequent blasting creates loud noises that disturb daily life inside the homes in the affected areas. The blasting also produces strong vibrations that crack the walls and foundations of homes.

ii. The removal and deposition of mining rubble and the movement of heavy trucks with mining materials and equipment to and from the mine create dust that settles on the homes and property of people within the affected area, causing respiratory and skin disorders.

iii. Toxic substances within the mining rubble and/or released as effluent leach onto the plaintiffs' land and into the waters on and under their lands, reducing the fertility of the land and poisoning their water sources.

**PARTICULARS OF SPECIAL DAMAGES**

Individual Plaintiffs will adduce at trial evidence of the following special damages:

i. Loss of rental income
ii. Loss of valuable property, such as crops and economic trees
iii. Loss of income from other sources, such as animal rearing
iv. Difference in value between original houses and resettlement houses
v. Value of unreplaced structures
vi. Medical costs

**WHEREFORE, THE PLAINTIFFS CLAIM IS FOR THE FOLLOWING**

1. General Damages
2. Special Damages
3. Damages for unlawful deprivation and or destruction of property
4. Damages for extreme emotional distress
5. Compensatory damages for breach of contract, in particular the Community Development Agreement (CDA) and other Resettlement Agreements
6. A Declaration that the Defendants have failed to comply with Section 38(1) of the Mines and Minerals Act 2009 Act No. 12 of 2009.
7. Enforcement of Section 38(1) of the Mines and Minerals Act, in particular with respect to resettlement and forced acquisition of land
8. A Declaration that the Defendants have failed to comply with Terms and Conditions of their Environmental Impact Assessment License.
9. Specific Performance of Article 3 of the Community Development Agreement (CDA 2017)
10. Specific Performance of Clause 15.13 of the Mining Lease Agreement of 2010
11. Abatement of the nuisance, in particular the emission of dust, toxic fumes, and loud noises that impinge on Plaintiffs' enjoyment of their property.
12. Damages for Nuisance suffered by the Plaintiffs.
13. An Order requiring the 11th Defendant to provide an accounting of its compliance with Section 15.13 of the Mining Lease Agreement 2010 and article 3 (i) of the Community Development Agreement (CDA 2017)
14. Interest pursuant to Section 4 (1) of the Law Reform (Miscellaneous Provisions) Cap 19 of the Laws of Sierra Leone 1960 till date of Judgment.
15. Any further or other Order(s) as this Honourable Court may deem fit and just.
16. Costs

---------------------------------

C O U N S E L

This Writ of Summons was issued by C & J PARTNERS, whose address for Service is NO. 1 Flower Corner, Makeni, Solicitors for and on behalf of the Plaintiffs herein.

LIST OF CLASS PLAINTIFFS IN THE CONSOLIDATED MATTER OF AIAH FENGAI WHO ARE MEMBERS OF THE MARGINALIZED AFFECTED PROPERTY OWNERS (MAPO) LG

| NO | NAME | ADRESS | SIGNATURE |
|---|---|---|---|
| 1 | SAYOH LAHAI | 4 KEISTER STREET | |
| 2 | FATMATA SHERIFF | 11 JABBA LANE | |
| 3 | SAHR KAINGBANJA | 13 JABBA STREET | |
| 4 | AZU CHUKU | 6 JABBA STREET | |
| 5 | SAHR ALLIEU | 2 JABBA STREET | |
| 6 | TAMBA SUNDU | 1 JABBA STREET | |
| 7 | BASHIRU CONTEH | 11 JABBA STREET | |
| 8 | BETTY LAMIN | 9 JABBA STREET | |
| 9 | ABU KAMARA | 25 SUNSUYAMA STREET | |
| 10 | KOMBA JIMISSA | FULLAH TOWN | |
| 11 | SAHR MOMOH | RENNER STREET | |
| 12 | KADIJATU SESAY | FULLAH TOWN | |
| 13 | FODAY FOFANAH | 10 JABBA LANE | |
| 14 | AMIDU FOFANAH | 17 JABBA STREET | |
| 15 | KUMBA SUMMER | SUNSUYAMA STREET | |
| 16 | ABUBAKARR KAMARA | SUNSUYAMA STREET | |
| 17 | HANNAH LEBBIE | 12 SUNSUYAMA STREET | |
| 18 | FANTA KAMARA | SUNSUYAMA STREET | |
| 19 | GALLEH JALLOH | 24 SUNSUYAMA STREET | |
| 20 | SIA MORSERAY | 2 KEISTER STREET | |
| 21 | TAMBA KEISTER | 3 KEISTER STREET | |

| 22 | IBRAHIM FILLIE | 1 KEISTER STREET | |
|---|---|---|---|
| 23 | BONDU MOIGUWA | 24 RENNER STREET | |
| 24 | TAMBA NICOL | RENNER STREET | |
| 25 | REBECCA ALLIEU | 6 YOKA STREET | |
| 26 | YEI JOHNNY | RENNER STREET | |
| 27 | POSSEH KAMARA | RENNER STREET | |
| 28 | FATU MUNYA SANNOH | 4 YOKA STREET | |
| 29 | TAMBA ALLIEU | 6 YOKA STREET | |
| 30 | MOHAMED SHUR | RENNER STREET | |
| 31 | SIA MOIQUE | JABBA STREET | |
| 32 | SAIDU BAH | 8 JABBA STREET | |
| 33 | ISATA SHERIFF | NO 9 AREA | |
| 34 | AIAH BOCKARIE | YOKA STREET | |
| 35 | PAUL S. MUSA | RENNER STREET | |
| 36 | AIAH MORSERAY | SUNSEYAMA STREET | |
| 37 | MARIE JALLOH | 1 SUNSEYAMA STREET | |
| 38 | KADIJATU BAH | KONO BOY SAQUEE STREET | |
| 39 | SAIDU BAH | 8 JABBA STREET | |
| 40 | MOHAMED TUNKARA | JABBA LANE | |
| 41 | MOHAMED JALLOH | RENNER STREET | |
| 42 | YIE BOIMA | 5 JABBA LANE | |
| 43 | MOHAMED BARRIE | RENNER STREET | |
| 44 | AMIDU SESAY | JABBA STREET | |
| 45 | FINDA MORIBA | 25 B RENNER STREET | |
| 46 | SIA KOMBA | 12 JABBA | |

| | | | |
|---|---|---|---|
| | | STREET | |
| 47 | SIA BIOMA | JABBA STREET | |
| 48 | JENEBA JALLOH | 8 JABBA LANE | |
| 49 | SAHR BRIMA BENDU | C-93 RESETTLEMENT VILLAGE | |
| 50 | FATMATA BARRIE | KONO BOY SAQUEE STREET | |
| 51 | ADAMA BONA | 26 SUNSEYAMA STREET | |
| 52 | HASSAN KOROMA | 3 JABBA STREET | |
| 53 | RACHEL BARRIE | D-21 RESETTLEMENT VILLAGE | |
| 54 | MARIAMA SESAY | TRIPOLI RESETTLEMET | |
| 55 | TAMBA MANGA | 1 YOKA STREET | |
| 56 | ADAMA MANSARAY | 25 SUNSEYAMA STREET | |
| 57 | IDRISSA SANKOH | 17 JABBA STREET | |
| 58 | FINDA BRIMA | TRIPOLI RESETTLEMET | |
| 59 | ALHAJI SANNOH | 4 YOKA STREET | |
| 60 | EMMANUEL MUSA | RENNER STREET | |
| 61 | SAHR KABBA | 4 JABBA STREET | |
| 62 | JOHN KAMARA | YOKA STREET | |
| 63 | RICHARD MORIBA | RENNER STREET | |
| 64 | ALHAJI YARROH JALLOH | 25 RENNER STREET | |
| 65 | TAMBA BOIMA | 25 SUNSEYAMA STREET | |
| 66 | ISATU BARRIE | SUNSEYA STREET | |
| 67 | KOMBA ALLIEU | KAMA NEW | |

| | | SITE | |
|---|---|---|---|
| 68 | FINDA KABBA | 23 SUNSEYA STREET | |
| 69 | HAJA BINTU KAMANDA | 21SUNSEYAMA STREET | |
| 70 | KADIATU CAREW | 27 KONO BOY SAQUEE STREET | |
| 71 | KOMBA GBORIE | 30 RENNER STREET | |
| 72 | SAHR MADINDA | 17 JABBA STREET | |
| 73 | FANTA KAMARA | 9 SUNSEYAMA STREET | |

## LIST OF PLAINTIFFS WHO ARE MEMBERS OF THE CLASS ACTION IN THE CONSOLIDATED MATTER OF MORIE MOMOH AND 14 OTHERS

| NO | NAME | ADRESS | SIGNATURE |
|---|---|---|---|
| 1 | FINDA KELLIE | C 7 RESETTLEMENT | |
| 2 | FATU BANGAO | A1-7095 BENGAZI RESETTLEMENT | |
| 3 | MAMAH SAMBA JALLOH | CO1-CO2 RESETTLEMENT | |
| 4 | FANTA MUNYA SANNOH | 4 YOKA STREET | |
| 5 | BONDU PESSIMA | C-115 RESETTLEMENT | |
| 6 | ISATA YOMBA THOLLEY | TRIPOLI RESETTLEMET | |
| 7 | FINDA MOIBA | TRIPOLI RESETTLEMENT | |
| 8 | PRINCE NDANEH | A 68 RESETTLEMENT | |
| 9 | KADIATU JALLOH | A1-052 BENGHAZI | |
| 10 | SIA AMADU GBONGBOR | A1- 031A RESETTLEMENT | |
| 11 | MORIE MOMOH | A-21 RESETTLEMENT | |
| 12 | MICHAEL AIAH GBORIE | A-50 | |

| | | | |
|---|---|---|---|
| | | RESETTLEMENT KAIMBADU | |
| 13 | MOHAMED SAQUEE | A2- 124 NEW LONDON | |
| 14 | TAMBA KENNETH SAM | A1- 085A RESETTLEMENT | |
| 15 | ANITA MILLS | B25- RESETTLEMENT KAIMBADU | |

C O U N S E L

**IN THE CONSOLIDATED MATTERS OF CC: 19/19, F; NO:6-AIAH FENGAI AND 73 OTHERS & CC: 12/20, M; NO:9-MORIE MOMOH AND 14 OTHERS & MARGINALISED AFFECTED PROPERTY OWNERS (LG)**

CC: /21 2021 F. NO:

**IN THE HIGH COURT OF SIERRA LEONE**
**(GENERAL CIVIL DIVISION)**
**SIERRA LEONE (MAKENI DISTRICT REGISTRY)**
**(TO WIT)**

**BETWEEN:**

| | |
|---|---|
| AIAH FENGAI AND 73 OTHERS<br>3 RENNER STREET, (NO: 9)<br>KOIDU CITY | 1ST PLAINTIFFS |
| MORIE MOMOH AND 14 OTHERS<br>A 2/3 RESETTLEMENT<br>KOIDU CITY | 2ND PLAINTIFFS |
| MARGINALISED AFFECTED PROPERTY OWNERS (LG)<br>19 GBENSE NGUMBU STREET<br>TANKORO<br>KOIDU CITY | 3RD PLAINTIFFS |

**AND**

| | |
|---|---|
| OCTEA LTD | 1st DEFENDANT |
| THE MANAGING DIRECTOR OCTEA LIMITED | 2nd DEFENDANT |
| OCTEA DIAMOND LTD | 3rd DEFENDANT |
| THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED | 4th DEFENDANT |
| OCTEA MINING LIMITED | 5th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA MINING LIMITED | 6th DEFENDANT |
| OCTEA SERVICES LIMITED | 7th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA SERVICES LIMITED | 8th DEFENDANT |
| OCTEA FOUNDATION LIMITED | 9th DEFENDANT |
| THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED | 10th DEFENDANT |
| KOIDU LIMITED | 11th DEFENDANT |
| THE MANAGING DIRECTOR KOIDU LIMITED | 12th DEFENDANT |

ALL OF 84 WILKINGSON ROAD FREETOWN, SIERRA LEONE

**This writ was served by on**
**the Defendant**
**On the day of 2021**

Dated: this day of 2021
Address:
Signed:

WRIT OF SUMMONS

C & J PARTNERS, 1 FLOWER CORNER, MAKENI.
SOLICITORS FOR THE PLAINTIFFS

# EXHIBIT 3



MISC. APP. / 14/19 2019 M

IN THE HIGH COURT OF SIERRA LEONE
(COMMERCIAL AND ADMIRALTY DIVISION)

IN THE MATTER OF THE MINES AND MINERAL ACT (2009)

AND

IN THE MATTER OF THE COMPANIES ACT 2009

AND

IN THE MATTER OF THE 2010 MINING LEASE AGREEMENT BETWEEN THE REPUBLIC OF SIERRA LEONE ON THE ONE HAND AND KOIDU HOLDINGS S.A NOW KNOWN AS KOINDU LIMITED ON THE OTHER HAND

AND

IN THE MATTTER RELATING, TOUCHING AND CONCERNING OCTEA LIMITED AND ITS SUBSIDIARY COMPANIES OCTEA DIAMOND LIMITED, OCTER MINING LIMITED, OCTEA SERVICES LTD, AND OCTEA FOUNDATION LIMITED

AND

IN THE MATTER OF THE KOIDU HOLDINGS (SA) KOIDU KIMBERLITE PROJECT, EXTENDED AREA SETTLEMNT PLAN OF JUNE 2012

AND

IN THE MATTER OF KOIDU LIMITED SIERRA LEONE

AND

IN THE MATTER OF THE HIGH COURT RULES 2007

AND

IN THE MATTER OF AN APPLICATION OF MARGINALISED AFFECTED PROPERTY OWNERS (LG)

**BETWEEN:**

MARGINALISED AFFECTED PROPERTY OWNERS (MAPO) (LG)
19 GBENSE NGUMBU STREET
KOIDU CITY — APPLICANT

AND

1. OCTEA LIMITED — 1st RESPONDENT
2. THE MANAGING DIRECTOR OCTEA LIMITED — 2nd RESPONDENT
3. OCTEAD DIAMOND LTD — 3rd RESPONDENT
4. THE MANAGING DIRECTOR OCTEA DIAMOND LIMITED — 4th RESPONDENT
5. OCTEA MINING LIMITED — 5th RESPONDENT
6. THE MANAGING DIRECTOR OCTEA MINING LIMITED — 6th RESPONDENT
7. OCTEA SERVICES LIMITED — 7th RESPONDENT
8. THE MANAGING DIRECTOR OCTEA SERVICES LIMITED — 8th RESPONDENT
9. OCTEA FOUNDATION LIMITED — 9th RESPONDENT
10. THE MANAGING DIRECTOR OCTEA FOUNDATION LIMITED — 10th RESPONDENT
11. KOIDU LIMITED — 11th RESPONDENT
12. THE MANAGING DIRECTOR KOIDU LIMITED — 12th RESPONDENT

**ALL OF 84 WILLKINSON ROAD FREETOWN SIERRA LEONE**

**RULING DATED 13TH DAY OF MARCH 2019 DELIVERED BY HON. JUSTICE ANSUMANA IVAN SESAY (J)**

UPON reading the Ex-parte Originating Summons dated 4th March 2019 and upon hearing CMB Jalloh (Esq) Solicitor for the Applicant and having read the affidavits in support and the various exhibits referred to therein and also relying on Order 7 rule 2 (1) and rule 3 (1) together with Order 7,rule 6 (1) , of our High Court Rules of 2007

I hereby make the under mentioned Orders

1. That 84, Wilkinson Road Freetown be the address for service for all legal proceedings instituted against the 1st, 2nd, 3rd, 4th, 5th, 6th 7th 8th 9th 10th 11th and 12th Respondent/Defendants.

2. I further Order/declare that such service at 84 Wilkinson Road Freetown in the Republic of Sierra Leone shall be deemed to be effective personal service on the 1st, 2nd, 3rd, 4th, 5th, 6th 7th 8th, 9th 10th 11th and 12th Respondents/ Defendants.

3. Costs in the Cause

CERTIFIED TRUE COPY

BY THE COURT

DEPUTY MASTER & REGISTRAR
THE REGISTRAR
DATE
EASTERN REGION

REGISTRAR

# EXHIBIT 4

**CC: 3/20** **2020** **M.** **NO.2**

**IN THE HIGH COURT O SIERRA LEONE**
**(GENERAL CIVIL DIVISION)**

BETWEEN:

MORIE MOMOH & 14 OTHERS - 1ST PLAINTIFFS/RESPONDENTS
2/3 RESETLEMENT
KOIDU CITY

MARGINALISED AFFECTED PROPERTY OWNERS - 2ND PLAINTIFFS/RESPONDENTS
(IG)
9 GBENSE NGUMBU STREET
TANKORO
KONO CITY

AND

OCTEA LTD - 1ST DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA - 2ND DEFENDANT/RESPONDENTS
OCTEA DIAMOND LTD - 3RD DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA DIAMOND LTD - 4TH DEFENDANT/RESPONDENTS
OCTRA MINING LTD - 5TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA DIAMOND LTD - 6TH DEFENDANT/RESPONDENTS
OCTEA SERVICES LTD - 7TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA LTD SERVICES LTD - 8TH DEFENDANT/RESPONDENTS
OCTEA FOUNDAION LTD - 9TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA FOUNDATION LTD - 10TH DEFENDANT/RESPONDENTS
KOIDU LTD - 11TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR KOIDU LTD - 12TH DEFENDANT/RESPONDENTS
ALL OF 84 WIKINSON ROAD FREETOWN, SIERRALEONE

---

**AN INTERIM COURT ORDER**

---

**C & J PARTNERS**
**1 JALLOH TERRACE**
**MAKENI KABALA HIGHWAY**
**MAKENI**
**SOLICITORS FOR PLAINTIFFS**

2. As a result of the serious nature of the purported facts, deposed to in the Affidavit-in-Support of the Ex-parte Application this Court hereby orders that the Ex-parte application is hereby converted into an inter parties application. Matter is adjourned to the 20th day of August, 2020 at 10 a.m.

**BY THE COURT**

**MASTER AND REGISTRAR**

**CERTIFIED TRUE COPY**

**MASTER AND REGISTRAR**

**CC: 3/20** **2020** **M.** **NO.2**

**IN THE HIGH COURT O SIERRA LEONE**
**(GENERAL CIVIL DIVISION)**

BETWEEN:

MORIE MOMOH & 14 OTHERS - 1ST PLAINTIFFS/RESPONDENTS
2/3 RESETLEMENT
KOIDU CITY

MARGINALISED AFFECTED PROPERTY OWNERS - 2ND PLAINTIFFS/RESPONDENTS
(IG)
9 GBENSE NGUMBU STREET
TANKORO
KONO CITY

AND

OCTEA LTD - 1ST DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA - 2ND DEFENDANT/RESPONDENTS
OCTEA DIAMOND LTD - 3RD DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA
DIAMOND LTD - 4TH DEFENDANT/RESPONDENTS
OCTRA MINING LTD - 5TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA
DIAMOND LTD - 6TH DEFENDANT/RESPONDENTS
OCTEA SERVICES LTD - 7TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA LTD
SERVICES LTD - 8TH DEFENDANT/RESPONDENTS
OCTEA FOUNDAION LTD - 9TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR OCTEA
FOUNDATION LTD - 10TH DEFENDANT/RESPONDENTS
KOIDU LTD - 11TH DEFENDANT/RESPONDENTS
THE MANAGING DIRECTOR KOIDU LTD - 12TH DEFENDANT/RESPONDENTS
ALL OF 84 WIKINSON ROAD FREETOWN, SIERRALEONE

**BEFORE THE HONOURABLETHE HON. MR. JUSTICE S. O. TAYLOR - J.**
**DATED 19TH DAY OF AUGUST 2020**

**HAVING HEARD** C.M.B. Jalloh Esq. in the presence of D. Fofanah and A.O. Kamara Esq. of Counsel for the Plaintiffs/Applicants herein

**HAVING NOTED the representatives of D. Taylor Esq.,**
**IT IS THIS DAY ORDERED AS FOLLOWS: -**

1. Order one is hereby granted as prayed:
   An interim Injunction restraining the Defendants/Respondent herein, whether by themselves, their servants, privies, relating, heirs, administrators, employees and/or agents from dealing or transacting in, transferring, interfering with, controlling, selling, renting, loaning, pledging, expiating, or in any other way from disposing of the Assets of the 1st, 2nd, 3rd, 4th, 5th, 6th , 7th, 8th, 9th, 10th, 11th and 12th Defendants herein, within and around the Mining Concession Area of the Republic of Sierra Leone pending the hearing and determination of this application pursuant to Order 35 Rules 1and 2 of the High Court Rules, 2007.